**MERRILL LYNCH PRIVATE CAPITAL, INC., Plaintiff,**

v.

**Sheikh Faisal H. ABOU KHADRA, Defendant.**

**Faisal H. ABU KHADRA and Orbit Establishment, Counterclaim Plaintiffs,**

v.

**MERRILL LYNCH PRIVATE CAPITAL, INC., Counterclaim Defendant.**

**No. 90 Civ. 1447 (RLC).**

United States District Court, S.D. New York.

May 31, 1991.

Abrams & Thaw, Farmingdale, N.Y. (Thomas J. Mullaney, of counsel), for plaintiff.

Meister Leventhal & Slade, New York City (Jeffrey C. Slade, Laura F. Dukess, of counsel), for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

This diversity case stems from loan transactions between plaintiff Merrill Lynch Private Capital, Inc. ("Merrill Lynch") and defendant Faisal H. Abou Khadra [1] ("Abou Khadra") that went awry. Merrill Lynch commenced suit against Abou Khadra to recover on a demand promissory note for a $1.5 million loan, and Abou Khadra, along with his sole proprie-

torship called Orbit Establishment ("Orbit"), counterclaimed for damages allegedly caused by Merrill Lynch's failure to provide a $5 million loan. The court granted Merrill Lynch's motion for summary judgment on its claim as well as its motion to confirm an order of attachment that it had previously obtained *ex parte. See Merrill Lynch Private Capital, Inc. v. Abou Khadra,* No. 90 Civ. 1447 (RLC), slip op. (S.D. N.Y. November 7, 1990), 1990 U.S.Dist. LEXIS 14,975, 1990 WL 176413. As for Merrill Lynch's motion to dismiss Abou Khadra's and Orbit's counterclaim, since matters outside the pleadings had been presented, the court converted the motion into one for summary judgment, *see* Rule 12(b), F.R.Civ.P., and allowed the parties additional time to submit all materials made pertinent to the motion by Rule 56, F.R.Civ.P. *See Merrill Lynch Private Capital, supra.*

Summary judgment may be granted only where "there is no genuine issue as to any material fact and [where] the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R.Civ.P.; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In making this determination, the court must draw all reasonable inferences against the moving party, *Wakefield v. Northern Telecom, Inc.,* 813 F.2d 535, 540 (2d Cir.1987), and must regard the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 241, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Herrmann v. Steinberg,* 812 F.2d 63, 65 (2d Cir.1987).

In their counterclaim, which is supported by an affidavit from Abou Khadra as well as by several documents, Abou Khadra and Orbit allege the following facts: Abou Khadra had transacted business with Merrill Lynch since the early 1960's and had become, by the early 1980's, Merrill Lynch's largest individual brokerage client. Sometime in late 1983 or early 1984, a Merrill Lynch representative named Riad

---

**1.** The spelling of defendant's name has alternated between "Abou Khadra" and "Abu Khadra" in the captions as well as in the parties' submis-

sions. For the sake of consistency with its prior spelling of defendant's name, the court uses "Abou Khadra" in this opinion as well.

Salame orally notified Abou Khadra that Merrill Lynch would provide a $5 million loan to finance additional construction work on a particular desalinization project that Orbit sought to undertake. Relying on Salame's representation, Orbit contracted to complete the additional construction work, and Abou Khadra executed personal guarantees of Orbit's performance.

Subsequently, Abou Khadra and Salame discussed the possibility of Abou Khadra obtaining a bank guarantee as security for the Merrill Lynch loan, but Salame assured Abou Khadra that the guarantee was merely a formality and not a prerequisite for the loan. Abou Khadra nonetheless pursued a bank guarantee, resulting in Bank Al–Masharek of Lebanon agreeing to provide the necessary guarantee. Abou Khadra thereafter informed Salame of this development. However, in April, 1984, when Abou Khadra and Salame met in New York with Donald H. Rundlett, then Merrill Lynch's president and chief executive officer, to finalize the loan, Rundlett stated that Merrill Lynch was not interested in a guarantee from Bank Al–Masharek and that Merrill Lynch would handle the guarantee through its own channels with Barclays Bank.

In May, 1984, Rundlett travelled to Saudi Arabia to inspect various projects, including Orbit's desalinization project. On May 31, Rundlett wrote to Abou Khadra, expressing approval of the desalinization project and confirming that "Merrill Lynch Private Capital is prepared to support [Abou Khadra] financially in the completion of this subject project and on any future projects that [Abou Khadra] might see fit to undertake." Affidavit of Faisal H. Abou Khadra, Exhibit D. On the same day, Rundlett wrote another letter to Abou Khadra, confirming a $1.5 million interim advance on the $5 million loan. *Id.*, Exhibit C. No mention was made about a bank guarantee in any of this correspondence.

On August 24, however, Merrill Lynch advised Abou Khadra that arrangements had been made with Barclays Bank to provide him with the remainder of the $5 million loan, "subject to the satisfactory com-

pletion of loan documentation which includes the guarantee and reimbursement agreement provided by Bank [Al–Masharek]. . . ." By September, Abou Khadra was desperate for the remaining funds and therefore signed and returned Merrill Lynch's proposed loan agreement (the "September loan agreement"), which made Merrill Lynch's obligation to lend explicitly contingent upon its receiving before the closing date "a Guarantee Agreement duly executed and delivered by Bank [Al–Masharek]." Affidavit of Robert W. Seitz ("Seitz Aff."), Exhibit C, § 4.02(b). Thereafter, Merrill Lynch never lent the remainder of the $5 million, apparently because the guarantee that Abou Khadra was able to obtain from Bank Al–Masharek did not meet Merrill Lynch's specifications.

Abou Khadra and Orbit claim that Merrill Lynch acted unreasonably and in bad faith in failing to provide the full $5 million loan. They assert that a bank guarantee was never a significant issue when Merrill Lynch first committed itself to providing the financing, and that Merrill Lynch's subsequent imposition of requirements pertaining to the bank guarantee was a pretext for its efforts to evade its loan commitment. They contend that Merrill Lynch's failure to provide the remaining funds forced Orbit to turn over its participation in the desalinization project to John Howard & Co., Ltd. John Howard later defaulted on the project, which in turn resulted in Abou Khadra's personal guarantees being drawn down and in Orbit's construction equipment being seized. Abou Khadra and Orbit seek $10 million in damages.

In the face of all these allegations, Merrill Lynch relies almost entirely on the September loan agreement to argue that Abou Khadra failed to obtain the required bank guarantee and that therefore, Merrill Lynch's obligation to provide the remainder of the $5 million loan never came into existence. Merrill Lynch has submitted a copy of the September loan agreement, which bears only Abou Khadra's signature. To Abou Khadra's knowledge, Merrill Lynch never signed that agreement, and Merrill Lynch has not contended otherwise. In any event, Merrill Lynch asserts that alle-

gations in the counterclaim concerning any prior agreements about the $5 million loan that contradict the terms of the September loan agreement are precluded by the parol evidence rule.

■ First, it is apparent from the parties' submissions that the parol evidence rule does not bar evidence of prior and contemporaneous agreements between Merrill Lynch and Abou Khadra, for the simple reason that the September loan agreement is not a valid enforceable contract. The September loan agreement provides that it "shall become effective when copies [thereof] which, when taken together, bear the signatures of each of the parties [thereto] shall have been received...." Seitz Aff., Exhibit C, § 7.10. Since Merrill Lynch, which bears the initial burden of showing the absence of any genuine issue of material fact, *Celotex, supra,* 477 U.S. at 323–25, 106 S.Ct. at 2552–54, has submitted a copy of the September loan agreement that bears only Abou Khadra's signature, and has not controverted Abou Khadra's contention that Merrill Lynch itself never signed that agreement, the court infers that the September loan agreement, by its very terms, never became an enforceable written instrument. Therefore, the parol evidence rule does not apply. *See, e.g., Smith v. Dotterweich,* 200 N.Y. 299, 93 N.E. 985 (1911); *see also Restatement (Second) of Contracts* § 213(1) (1979) [hereinafter *Restatement*] ("A *binding* integrated agreement discharges prior agreements to the extent that it is inconsistent with them") (emphasis added).

■ Second, even if Merrill Lynch did in fact execute the September loan agreement, and the document thereafter became mutually binding, the parol evidence rule does not bar Abou Khadra from showing that the writing is not an integrated agreement or that he signed the writing under duress. *See St. Paul Fire and Marine Ins. Co. v. Robert T. Norton,* No. 81 Civ. 2910, slip op. (S.D.N.Y. January 11, 1983) (Owen, J.), *quoting* 4 *Williston on Contracts* § 631, at 949 ("The parol evidence rule 'requires, *in the absence of* fraud, *duress,* mutual mistake, or something of

this kind, the exclusion of extrinsic evidence ...'") (emphasis added); *see generally Restatement* § 214.

■ In any event, the unrefuted allegations in Abou Khadra's and Orbit's counterclaim, supported by Abou Khadra's affidavit and by various documents, are sufficient to establish the existence of elements essential to their case and on which they will bear the burden of proof at trial. *See Celotex, supra,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Even if Abou Khadra is held to the written terms in the September loan agreement, there remain triable issues of fact as to whether Abou Khadra sufficiently met the bank guarantee requirement and whether Merrill Lynch unjustifiably reneged on its obligations under that agreement. *See Teachers Ins. & Annuity Ass'n of America v. Butler,* 626 F.Supp. 1229, 1231–32 (S.D.N.Y.1986) (Weinfeld, J.), *quoting Candid Productions, Inc. v. International Skating Union,* 530 F.Supp. 1330, 1334–35 (S.D.N.Y.1982) (Weinfeld, J.) ("Where the parties are under a duty to perform that is definite and certain the courts will enforce a duty of good faith, including good faith negotiation, in order that a party not escape from the obligation he has contracted to perform").

Alternatively, Abou Khadra and Orbit may proceed with their counterclaim on the theory that Merrill Lynch's alleged breach of its original oral agreement to provide the full $5 million loan entitles them to relief under the doctrine of promissory estoppel. They allege that Merrill Lynch initially promised to provide them with the $5 million loan without requiring a bank guarantee, that they rightfully relied on this promise and that, in so relying, they changed their positions to their injury. *See, e.g., Special Event Entertainment v. Rockefeller Center, Inc.,* 458 F.Supp. 72, 76 (S.D.N.Y.1978) (Duffy, J.); *Nassau Trust Co. v. Montrose Concrete Prod.,* 56 N.Y.2d 175, 182–83, 451 N.Y.S.2d 663, 667, 436 N.E.2d 1265, 1268–69 (1982); *see generally Restatement* § 90; *cf. Manufacturers & Traders Trust Co. v. Cottrell,* 71 A.D.2d 538, 422 N.Y.S.2d 990, 993 (4th Dep't 1979) (triable issues of fact existed as to whether

mortgagee, by its conduct, induced mortgagor to believe that it would ignore mortgagor's default).

Because there exist genuine issues of material facts concerning Abou Khadra's and Orbit's counterclaim, Merrill Lynch's motion for summary judgment is denied.

IT IS SO ORDERED.