Manufacturers and Traders Trust Company, Respondent-Appellant, v Edward H. Cottrell et al., Appellants-Respondents, et al., Defendants.

Fourth Department, December 21, 1979

## APPEARANCES OF COUNSEL

*Duke, Holzman, Yaeger & Radlin (Edwin P. Yaeger* of counsel), for appellants-respondents.

*Diebold & Millonzi (F. James Kane, Jr.,* and *Robert I. Millonzi* of counsel), for respondent-appellant.

## OPINION OF THE COURT

SCHNEPP, J.

Plaintiff bank, the Manufacturers and Traders Trust Company, seeks to foreclose its mortgage dated March 14, 1975 in the principal amount of $2,068,500 and executed by Edward H. Cottrell and Kenford Company, Inc. The mortgage constitutes a first lien on real property situate in the Towns of Lancaster and West Seneca, New York. Plaintiff claims that the mortgage interest which became due on December 31, 1977, pursuant to a modifying agreement dated March 3, 1976, was not paid and that by reason of this default it is entitled to maintain this action which it instituted in October, 1978. Defendants-appellants ("defendants"), Edward H. Cottrell, the Kenford Company and four other corporations apparently owned and controlled by Cottrell, assert by way of affirmative defenses and counterclaims that plaintiff is estop-

ped from foreclosing the mortgage because of its fraudulent conduct in inducing defendant Cottrell to sign the March 3, 1976 contract and its breach of express and implied agreements to forbear demanding payment of the mortgage in full until an orderly liquidation of the Lancaster real property could be achieved. In addition, defendants seek to recover damages. Plaintiff contends that the terms of the agreement prevent defendants from interposing defenses and counterclaims to this foreclosure action and that they are not barred by *res judicata* principles.

Special Term, Erie County Court, measuring the conduct of the parties by the standards established in the March 3, 1976 agreement, granted plaintiff's motion to strike the answer and for summary judgment as to the Lancaster property. It denied, however, the motion for summary judgment with respect to the foreclosure sought against the West Seneca property, concluding that the defenses and counterclaims were not relinquished because the agreement related only to the Lancaster property. This appeal by defendants and cross appeal by plaintiff followed.

A brief review of the facts is necessary for the determination of the questions posed on this appeal. In 1975 plaintiff instituted an action to foreclose this mortgage and the defendants responded with a number of affirmative defenses and counterclaims. On March 3, 1976 a settlement was entered into between plaintiff and Cottrell, the purpose of which was to give Cottrell an opportunity over a three- to-five-year period to liquidate the mortgaged Lancaster real property in an orderly fashion in order to obtain the necessary funds to discharge the mortgage debt. Under the agreement the 1976 mortgage interest was payable by December 31, 1977, and the interest for the years 1977 and 1978 was payable respectively by December 31 of the following year. Plaintiff had the right to approve all sales of the real property and agreed not to withhold its approval unreasonably, to provide mortgage releases and to extend mortgage financing to credit-worthy buyers. Under the agreement plaintiff could institute foreclosure proceedings upon written notice if a default occurred, in which event Cottrell had the right to give the bank a deed in lieu of foreclosure. Cottrell agreed, however, that neither he nor his controlled corporations "will interpose any defense against such foreclosure, nor assert any counterclaim against the Trust Company". On the basis of a stipulation then

entered into by the parties, the 1975 foreclosure action was discontinued without prejudice to the plaintiff, and the affirmative defenses and counterclaims of the defendants were "discontinued on the merits pursuant to an agreement between the plaintiff and Edward H. Cottrell". It is undisputed that the interest due on December 31, 1977 remains unpaid.

According to Cottrell's uncontroverted sworn statement, during December, 1977 he advised an officer of plaintiff of his inability to pay the December 31, 1977 interest and offered to deed the property to the bank. He was told that the bank preferred to see the property sold and that it recommended that the negotiations continue to reach a firm agreement for its sale. In a letter dated March 2, 1978 to the bank, Cottrell recognized the existing right of the bank to foreclose the mortgage, while expressing his understanding that the agreement of March 3, 1976 continued in full force and effect. On May 9, 1978 Cottrell submitted to the bank a land development agreement arranged with Patrick Marrano Associates, Inc. ("Marrano"). Under this proposal, for which bank financing was required, a portion of the Lancaster property was to be subdivided and developed. On May 12, 1978 at a meeting with bank officials concerning the approval and financing of this agreement, Cottrell was advised that the plaintiff would not discuss the proposal, that Cottrell was in default of the March 3, 1976 agreement, and that, if he failed to make a $1,000,000 payment of principal on the loan by July 1, 1978, the bank would begin foreclosure proceedings.

Defendants claim that, if the March 3, 1976 contract was valid, it was in full force and effect at the time they submitted the Marrano agreement and that the bank, therefore, was obligated to consider its terms in good faith. Plaintiff claims that the March 3, 1976 contract and its responsibilities terminated on December 31, 1977.

In our opinion the pleadings and proofs submitted on this motion, construed in a light most favorable to defendants, establish that a triable issue of fact exists as to (1) whether the bank by its conduct induced Cottrell to believe that it would ignore the default in the payment of interest due on December 31, 1977 and afford him further opportunity to liquidate the Lancaster properties and (2) whether Cottrell acted reasonably in reliance on this belief to his prejudice, thereby estopping plaintiff from foreclosing its mortgage without first making a demand for the total amount of interest in

arrears *(Marine Midland Bank-Western v Center of Williamsville,* 48 AD2d 764; see, also, 14 Carmody-Wait 2d, NY Prac, Mortgage Foreclosure, §§ 92:49-92:51; 1 Wiltsie, Mortgage Foreclosure [5th ed], § 172).

■ The affirmative determination of this threshold issue may well raise other issues of fact perceived in its shadow that may have a substantial impact on the rights and liabilities of the parties, e.g., has the plaintiff breached its obligations under the March 3, 1976 agreement. Summary judgment should not be granted where there is any doubt as to the existence of a triable issue *(Rotuba Extruders v Ceppos,* 46 NY2d 223, 231; *Phillips v Kantor & Co.,* 31 NY2d 307).

■ The first affirmative defense and counterclaim, however, must be dismissed for legal insufficiency. True, defendants' allegation that Cottrell was fraudulently induced to enter into the agreement of March 3, 1976, standing alone, cannot be deemed insufficient as a matter of law. "[A] contractual promise made with the undisclosed intention not to perform it constitutes fraud" *(Sabo v Delman,* 3 NY2d 155, 162). A contract thus procured is voidable at the option of the defrauded party and unenforceable (24 NY Jur, Fraud & Deceit, § 10; Restatement, Contracts, § 476; see, also, *Channel Master Corp. v Aluminum Ltd. Sales,* 4 NY2d 403). The intention, however, not to perform the agreement of March 3, 1976 must have existed at the time that it was entered into *(Adams v Clark,* 239 NY 403; 24 NY Jur, Fraud & Deceit, § 56). Ordinarily, a fraudulent intent not to perform an agreement cannot be inferred merely from the fact of nonperformance *(Adams v Clark, supra;* Restatement, Torts 2d, § 530, comment *d;* 24 NY Jur, Fraud & Deceit, § 57). In the instant case defendants point merely to the asserted failure of the plaintiff to consider the Marrano sale proposal in good faith as required under the terms of March 3, 1976 agreement. This evidence, by itself, is not enough to create a triable issue as to the fraudulent intent of the bank. The failure to perform constitutes a breach of contract *(Wegman v Dairylea Co-op.,* 50 AD2d 108, 113; see, also, *Lanzi v Brooks,* 54 AD2d 1057, affd 43 NY2d 778).

■ We have considered also the legal sufficiency of the second affirmative defense and counterclaim which claims an estoppel based on the alleged breach by the plaintiff of the March 3, 1976 contract. Because of the possible existence of factual issues, we do not summarily dismiss this defense and counterclaim *(Rotuba Extruders v Ceppos, supra).* This is not

to say, however, that plaintiff will be indefinitely estopped from foreclosing its mortgage. During the 22 months of forbearance from March 3, 1976 to December 31, 1977, a $10,000 sale of real property was approved by the plaintiff and the net proceeds applied to the mortgage pursuant to the agreement. Defendants have not tendered any other sums to apply to the principal or interest owing on the mortgage. They maintain that an indefinite forbearance on the part of the plaintiff is required while the Lancaster property is liquidated. At the most, defendants should be afforded a reasonable time to pay the total interest in arrears during which the plaintiff will be required to forbear assertion of its rights under the mortgage (*Marine Midland Bank-Western v Center of Williamsville,* 48 AD2d 764, *supra). Any other right of the defendants is limited to a claim for damages suffered by reason of the breach (see Restatement, Contracts, § 357; 12 Williston, Contracts [3d ed], § 1454). However, if it is determined that the plaintiff did not impliedly agree to ignore the default, it could not have breached the contract and thus would have an absolute right to foreclose the mortgage.

■ Finally, a finding that plaintiff breached the agreement of March 3, 1976 would have other implications. Plaintiff claims that the earlier judgment is *res judicata* and defendants are barred in this action from raising defenses or counterclaims. Defendants claim that their promise not to reassert defenses and counterclaims was dependent upon plaintiff's promise to assist in the orderly liquidation of the Lancaster property and that plaintiff's breach of that agreement constitutes a failure of consideration for defendants' promise. In short, the stipulation should be vacated in the event it is found that plaintiff breached the agreement. It would be inequitable under this circumstance to permit enforcement of the stipulation of discontinuance in the prior foreclosure action upon which a judgment was entered. It may be argued that this relief may be obtained only by way of motion or plenary action in the court where the judgment dismissing the first foreclosure action was entered. However, there is no reason why relief from the discontinuance cannot be given here if it is found that plaintiff breached the agreement (see *Matter of Horton,* 51 AD2d 856). We note that *Teitelbaum Holdings v Gold* (48 NY2d 51) does not stand adverse to this proposition.

Accordingly, the order and judgment of Special Term should

be reversed and plaintiff's motion should be denied except as stated herein.

HANCOCK, JR., J. (dissenting). I agree with the analysis of the issues and the conclusions in the memoranda at Special Term, McCARTHY, J. In the letter written by defendant Cottrell on March 2, 1978 he states:

"1. Under my agreement with the Trust Company dated March 3, 1976, I became obligated to pay, by December 31, 1977, the interest on my indebtedness to the Trust Company for the calendar year 1976.

"2. In view of my inability to consummate a sale of all or a substantial portion of the Lancaster properties prior to December 31, 1977, I was at that time, and continue now to be, unable to make the payment required by our agreement. I, of course, acknowledge my responsibility in this respect."

and further:

"4. I understand and confirm that the Trust Company's current election to withhold the forwarding to me of a written notification of intention to foreclose does not constitute in any sense a waiver by the Trust Company of any of its rights or privileges under the March 3, 1976 agreement, and that position is taken and maintained by the Trust Company at its sole option without prejudice to any of its rights under that Agreement. In other words, the Trust Company continues, under the March 3, 1976 agreement, to have the right at any time while I am in default under the agreement, at its sole option and discretion, to forward to me written notification of intention to foreclose to which reference is made in paragraph 4(C) of the agreement.

"5. I am now and shall continue to pursue every reasonable means of effecting an orderly liquidation of the Lancaster properties in order to satisfy my obligations to the Trust Company.

"This letter is written with the expressed understanding that the agreement of March 3, 1976 continues in full force and effect and is in no way modified by this letter."

This letter is an unequivocal acknowledgment of Cottrell's continuing default and the plaintiff bank's continuing "right at any time while [Cottrell is] in default under the agreement, at its sole option and discretion" to commence foreclosure proceedings under the March 3, 1976 agreement. The majority hold that the last sentence of Mr. Cottrell's letter, to the effect

that the agreement of March 3, 1976 continues in full force and effect, creates a question of fact as to whether plaintiff bank, despite its unqualified right to foreclose at any time at its discretion, nevertheless intended to afford Cottrell a further grace period in which to liquidate the Lancaster properties. I cannot agree. The last sentence of the March 2, 1978 letter is, in my opinion, solely for the benefit of the bank and a re-emphasis of the express reservations of the bank's rights under the March 3, 1976 agreement as spelled out in paragraph 4 of the March 2, 1978 letter, including particularly and most importantly, its absolute right to commence foreclosure in its sole discretion at any time while Cottrell remains in default. The letter of March 2, 1978 is not signed or accepted by the bank and does not on its face purport to be binding on the bank. There is nothing in the letter or in the circumstances surrounding its preparation and delivery suggesting that it was intended to impose any obligation on the bank. The letter clearly had one purpose: to preserve the bank's unlimited right to foreclose because of the defendants' admitted default under the March 3, 1976 agreement and to assure that the bank's delay in foreclosing under that agreement would not be construed as a waiver of that right. To interpret the last sentence of the March 2, 1978 letter as making the bank's right to immediate foreclosure subject to the condition that Cottrell should have further time to liquidate the properties is not only contrary to the plain meaning of the letter but destroys its very purpose. Such interpretation would impute to the bank the intention of preserving its unqualified right to foreclose in the specific language of paragraphs 1 and 4 of the letter and by the last sentence giving that right away by making it subject to Cottrell's continued right to liquidate the properties under paragraph 2 of the March 3, 1976 agreement as though the default had not yet occurred—something that the bank had no obligation and no reason to do and an absurdity that the bank could never have intended. Therefore, in my opinion, plaintiff bank was under no contractual duty to consider the Marrano deal.

Any claim of waiver of the bank's rights to foreclose and to hold Cottrell to his promise in the March 3, 1976 contract not to interpose any defenses or counterclaims is negated by the express terms of the March 2, 1978 letter. Likewise I believe that letter precludes any claim of estoppel. Even if this were not so, there is no showing of any change of position by Cottrell which would give rise to a claim of estoppel. He was

in default on December 31, 1977 and by terms of the March 2, 1978 letter remained in default and subject to foreclosure at all times thereafter. For this reason, cases such as *Thomson v Poor* (147 NY 402) and *Marine Midland Bank-Western v Center of Williamsville* (48 AD2d 764, *supra)* (where the due date was extended and there was forbearance from declaring a default) are not in point.

Inasmuch as there are, in my opinion, no questions of fact requiring a trial, I respectfully dissent and vote to affirm.

SIMONS, J. P., DOERR and WITMER, JJ., concur with SCHNEPP, J.; HANCOCK, JR., J., dissents and votes to affirm in an opinion.

Order and judgment reversed, with costs to defendants and motion denied in accordance with opinion by SCHNEPP, J.