**Keith C. PERRY, Plaintiff,**

v.

**VANTEON CORP., Defendant.**

**No. 01–CV–6205L.**

United States District Court,
W.D. New York.

Jan. 22, 2002.

Peter C. Nelson, Rochester, NY, for Plaintiff.

James Metler, Boylan, Brown, Code, Fowler, Vigdor & Wilson, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Keith C. Perry, commenced this action on April 25, 2001, alleging various causes of action under New York law arising out of certain events relating to his termination from employment by defendant Vanteon Corp. ("Vanteon" or "defendant"). Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

Plaintiff filed an amended complaint as of right on May 15, 2001, adding several additional causes of action under New York law, all relating to the same facts concerning his employment with and termination from Vanteon. Vanteon has moved to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion is denied.

## FACTUAL BACKGROUND

The complaint alleges the following facts, which must be accepted as true for purposes of defendant's motion to dismiss, see *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

Plaintiff, a California resident, was hired by Vanteon, a New York corporation with its principal place of business in Pittsford, New York, on November 1, 1999, as Senior Vice President, Line of Businesses, Sales and Marketing. Plaintiff was hired pursuant to a letter agreement ("the Letter Agreement") from Vanteon, dated October 19, 1999.

The Letter Agreement provided that the parties would set a mutually agreed-upon performance target for the first sixty days of plaintiff's employment, which, if achieved, would entitle plaintiff to a bonus of $23,333. The agreement also indicated that Vanteon would set performance targets for the first and second halves of 2000. If plaintiff achieved the targets for 2000, he would earn a $170,000 bonus, for a total of $193,333 through the end of 2000. Letter Agreement, Defendant's Motion to Dismiss Ex. B, at 1.[1]

Plaintiff alleges that although he requested Vanteon to set performance targets for him, defendant failed to do so. Plaintiff alleges that during his first sixty days at Vanteon, he achieved sales, revenues and earnings that would have met any reasonable performance target, but Vanteon neither set any targets nor paid plaintiff any bonuses in accordance with the Letter Agreement.

Subsequent to December 30, 1999, Vanteon prepared a Management Agreement that was intended to "clarify and expand the terms of the Letter Agreement ...." Amended Complaint ¶ 28. Like the Letter

---

1. Because the Letter Agreement is referred to in the complaint and is central to some of plaintiff's claims, the court may consider it on a motion to dismiss. *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.*, 155 F.3d 59, 67 (2d Cir.1998); *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993); *Walsh v. Eastman Kodak Co.*, 53 F.Supp.2d 569, 570 (W.D.N.Y.1999).

Agreement, the Management Agreement provided that plaintiff would participate in Vanteon's bonus program. Management Agreement ("MA"), Defendant's Motion to Dismiss Ex. C, ¶ 9(b). Although the Management Agreement does not specify the potential amount of plaintiff's bonuses, the complaint alleges that the parties intended that bonuses would be provided along the same lines as provided in the Letter Agreement, *i.e.,* that plaintiff would be given performance targets for 2000, which, if met, would entitle plaintiff to a bonus of $170,000. As stated, defendant never set such targets.

The Management Agreement also provided that if plaintiff were terminated without cause, he would receive severance pay of up to six months' salary, and outplacement services up to $30,000. MA ¶ 9(d)(ii). The complaint states that "[t]he Management Agreement also intended [*sic*] to include continuation of life insurance, health insurance, and disability insurance," Amended Complaint ¶ 30, and "also provided for the payment of attorneys fees incurred by either party in order to remedy a breach by the other." Amended Complaint ¶ 31.

Plaintiff was terminated by Vanteon on September 29, 2000, allegedly without cause. Vanteon, however, asserting that the termination was for cause, refused to pay plaintiff any salary, outplacement services, or insurance benefits beyond the date of plaintiff's termination.

Based on these allegations, plaintiff has asserted twelve causes of action against Vanteon. The first ten causes of action are all based on Vanteon's alleged breaches of the Letter Agreement and the Management Agreement, based on defendant's failure to set performance targets for plaintiff and to pay him bonuses and sever-

ance benefits. These claims are premised on various legal theories ranging from breach of contract to unjust enrichment. The individual claims will be addressed in detail below.

Plaintiff also alleges in the eleventh cause of action that defendant orally promised him a $10,000 signing bonus, of which only $5000 was ever paid. The twelfth cause of action asserts a claim under N.Y. Labor Law § 198, which provides for liquidated damages equal to twenty-five percent of the total wages found to be due to a prevailing plaintiff in an action instituted upon a wage claim.

For relief, plaintiff requests a total award of $175,000 in damages, plus interest, liquidated damages in an amount equal to twenty-five percent of the compensatory damage award, and attorney's fees and costs.

## DISCUSSION

### I. Claims Under the Letter Agreement and Alleged Oral Promise

The first four causes of action in the amended complaint all relate to defendant's alleged promises contained in the Letter Agreement. The first cause of action alleges that Vanteon breached that agreement by failing to set performance targets for plaintiff for the first sixty days of his employment, and by failing to pay him any bonus for that period; that claim alleges damages of $23,333. The second and third causes of action are based on theories of quantum meruit and unjust enrichment, respectively, for the work performed by plaintiff during his first sixty days at Vanteon. Both those claims request damages of $23,300.[2] The fourth cause of action alleges that due to defen-

2. The third cause of action states that "Vanteon should pay plaintiff $23,3000." Amend-

ed Complaint ¶ 19. The court presumes that plaintiff intended that figure to be $23,300.

dant's failure to set performance targets for plaintiff for either his first sixty days or for 2000, as called for by the Letter Agreement, plaintiff has been damaged in the amount of $108,333. That figure appears to be based on the sum of $23,333 (the sixty-day bonus) and $85,000 (plaintiff's prospective bonus for the first six months of 2000).

The eleventh cause of action alleges that at the time of plaintiff's hire, defendant also orally promised him a signing bonus of $10,000, to be paid in equal monthly installments over four months. Defendant paid only $5000 of that promised bonus, however.

Vanteon contends that these claims must fail because the Letter Agreement and alleged oral promise were superseded by the Management Agreement. The Management Agreement states:

> *Complete Agreement.* This Agreement, those documents expressly referred to herein, and other documents of even date herewith embody the complete agreement and understanding among the parties and supersede any prior understandings, agreements, or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way.

MA ¶ 14(c). Relying on this provision, defendant contends that any claims based on the Letter Agreement or the oral promise, at least to the extent that they contradict or are inconsistent with the terms of the Management Agreement, are barred.

Under New York law, a "subsequent contract concerning the same subject matter supersedes the prior contract. Even if the agreements are inconsistent or concern different subject matter, 'a contract that appears complete on its face is an integrated agreement as a matter of law.'" *Thayer v. Dial Indus. Sales, Inc.*, 85 F.Supp.2d 263, 268 (S.D.N.Y.2000) (quoting *Indepen-*

*dent Energy Corp. v. Trigen Energy Corp.*, 944 F.Supp. 1184, 1196 (S.D.N.Y.1996)); *accord Kreiss v. McCown De Leeuw & Co.*, 37 F.Supp.2d 294, 301 (S.D.N.Y.1999). "It is well settled," then, "that 'where the parties have clearly expressed or manifested their intention that a subsequent agreement supersede or substitute for an old agreement, the subsequent agreement extinguishes the old one and the remedy for any breach thereof is to sue on the superseding agreement.'" *Northville Indus. Corp. v. Fort Neck Oil Terms. Corp.*, 100 A.D.2d 865, 866, 474 N.Y.S.2d 122 (2d Dep't 1984) (contract stating that it was "in lieu of and shall supersede" any prior agreements superseded contract entered into a month earlier between the same parties) (quoting *American Broadcasting–Paramount Theatres v. American Mfrs. Ins. Co.*, 48 Misc.2d 397, 403, 265 N.Y.S.2d 76 (Sup.Ct.), *aff'd on opinion of lower court*, 24 A.D.2d 851, 265 N.Y.S.2d 577 (1st Dep't 1965), *aff'd*, 17 N.Y.2d 849, 271 N.Y.S.2d 284, 218 N.E.2d 324, *cert. denied*, 385 U.S. 931, 87 S.Ct. 291, 17 L.Ed.2d 213 (1966)), *aff'd*, 64 N.Y.2d 930, 488 N.Y.S.2d 648, 477 N.E.2d 1102 (1985).

In the case at bar, plaintiff does not dispute these general principles. He notes, however, that his eighth cause of action alleges that at the time that the parties entered into the Management Agreement, Vanteon, contrary to its representations to plaintiff, had no intent to set, or attempt to set, performance targets for plaintiff as called for in the agreement. Plaintiff states that if he can prove these allegations, the Management Agreement may be found to have been fraudulently induced and therefore unenforceable. If so, plaintiff contends, the Management Agreement could not have superseded the parties' prior agreements. Plaintiff therefore asserts that no determination can be made regarding the causes of action based

on the Letter Agreement and oral promise until a determination has been made concerning the enforceability of the Management Agreement.

 Although on its face the Management Agreement certainly does express an intent to supersede all prior agreements between the parties concerning the same subject matter, because plaintiff's eighth cause of action does allege facts which, if true, might call into doubt the enforceability of the Management Agreement, I conclude that plaintiff's claims based on the Letter Agreement and oral promise concerning the signing bonus are sufficient to survive a motion to dismiss.

In order to prevail on a motion to dismiss a complaint under Rule 12(b)(6), the moving party must show that "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When presented with a motion to dismiss for failure to state a claim, the court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

On a motion to dismiss for failure to state a claim, then, the "complaint must be sustained if relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *see also Patel v.*

*Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir.2001) (on motion to dismiss, district court must accept all allegations in the complaint as true and draw all inferences in non-moving party's favor, and "will not dismiss the case unless it is satisfied that the [plaintiff] cannot state any set of facts that would entitle him to relief").

In the case at bar, defendant's reply memorandum does not respond to plaintiff's arguments concerning the unenforceability of the Management Agreement; in fact, defendant's papers do not address plaintiff's eighth cause of action, or his allegations of misrepresentations by Vanteon at all. Accepting the truth of those allegations, the court cannot say at this point that it will be impossible for plaintiff to show that he was fraudulently induced to enter into the Management Agreement, and that the agreement is therefore unenforceable. That leaves open the possibility that the provisions of the Letter Agreement remained in force even after the parties entered into the Management Agreement, and that defendant may have continued to be bound by its alleged oral promise (assuming that plaintiff can show that the oral promise was otherwise enforceable) as well.

Under New York law, a "'contractual promise made with the undisclosed intention not to perform it constitutes fraud,'" and a "contract thus procured is voidable at the option of the defrauded party and unenforceable." *Manufacturers and Traders Trust Co. v. Cottrell*, 71 A.D.2d 538, 543, 422 N.Y.S.2d 990 (4th Dep't 1979) (quoting *Sabo v. Delman*, 3 N.Y.2d 155, 162, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957)). Plaintiffs' allegations are therefore sufficient to allow the claims based on the Letter Agreement to go forward. *See National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203–06 (2d Cir.1989) (plain-

tiffs raised issues of fact as to their claim that certain agreements were fraudulently induced, and hence unenforceable).

## II. Claim for Breach of Termination–Related Provisions of Management Agreement

In his fifth cause of action, plaintiff alleges that Vanteon breached the terms of the Management Agreement concerning Vanteon's obligations in the event of plaintiff's termination. Plaintiff alleges that the agreement provided that upon termination without cause, Vanteon would pay plaintiff severance pay equal to six months' salary, and that Vanteon would pay for outplacement services up to $30,000. The complaint also alleges that plaintiff's life, health, and disability insurance were also to continue if he were terminated without cause. Plaintiff alleges that defendant neither paid nor offered to pay any of these benefits.

Defendant contends that these allegations fail to state a claim for outplacement services, because plaintiff does not allege that he ever designated an outplacement firm, as required by the Management Agreement. The agreement provides, *inter alia,* that "[i]f Employee's employment is terminated by the Company without Cause . . ., the Company shall pay . . . to an outplacement firm designated by Employee to provide outplacement services to Employee, an amount not to exceed in the aggregate $30,000." MA ¶ 9(d)(ii). Thus, according to defendant, plaintiff is not entitled to any outplacement benefits unless he first designates an outplacement firm, and plaintiff does not allege that he ever did so.

In response, plaintiff does not contend that he has designated an outplacement service in accordance with the Management Agreement. Instead, he argues that since Vanteon had taken the position that

plaintiff's termination was for cause, and that plaintiff was therefore not entitled to any severance benefits under the Management Agreement, it would have been pointless for plaintiff to designate an outplacement firm.

I believe that defendant's motion to dismiss this claim should be denied as well. First, the motion does not address plaintiff's claims regarding any of the severance-related benefits other than outplacement services, such as continuation of salary or insurance coverage.

■ Although there is no allegation that plaintiff ever designated an outplacement firm, I find that this is not a sufficient basis upon which to dismiss this claim. The Management Agreement does provide that Vanteon will pay up to $30,000 "to an outplacement firm designated by Employee to provide outplacement services to Employee . . . ." Thus, the agreement appears to require plaintiff first to designate an outplacement firm in order to trigger Vanteon's obligations in that regard.

According to the complaint, however, Vanteon's refusal to pay plaintiff for outplacement services was not premised upon plaintiff's failure to designate an outplacement firm, but upon Vanteon's contention that plaintiff had been terminated for cause. Amended Complaint ¶ 33. As stated, the Management Agreement provides that Vanteon will pay outplacement and other severance benefits only if plaintiff's employment is terminated without cause. If indeed Vanteon made it clear that it considered plaintiff to have been terminated for cause, thereby rendering him ineligible for outplacement benefits, he may be excused from compliance with the designation requirement. "Acts made futile by the breaching party are not a prerequisite to recovery by the party claiming to have been wronged." *Scholle v. Cuban–Vene-*

*zuelan Oil Voting Trust,* 285 F.2d 318, 320 (2d Cir.1960) (citing *Strasbourger v. Leerburger,* 233 N.Y. 55, 60, 134 N.E. 834 (1922)). *See also Special Situations Fund III, L.P. v. Versus Technology, Inc.,* 227 A.D.2d 321, 642 N.Y.S.2d 894 (1st Dep't) ("A party will be relieved or discharged from the performance of futile acts or conditions precedent, including the tender of payment, upon the failure or refusal by a party to honor its obligations under their contract") (citing *Kooleraire Serv. & Installation Corp. v. Board of Educ.,* 28 N.Y.2d 101, 106, 320 N.Y.S.2d 46, 268 N.E.2d 782 (1971)), *leave to appeal denied,* 88 N.Y.2d 815, 651 N.Y.S.2d 16, 673 N.E.2d 1243 (1996). Plaintiff's fifth cause of action thus is adequate to state a claim for relief.

### III. Claim under N.Y. Labor Law § 198

Defendant contends that plaintiff's twelfth cause of action, under N.Y. Labor Law § 198, should be dismissed because it is contingent on plaintiff's success in prevailing on plaintiff's other causes of action, which, according to defendant, should also be dismissed.

Defendant's argument concerning this claim is thus itself contingent on this court's dismissal of plaintiff's other causes of action. Since I am denying defendant's motion to dismiss those other claims, I deny the motion insofar as it relates to this claim as well.

### IV. Rescission/Reformation of Management Agreement

Plaintiff's tenth cause of action alleges that "[i]t was the intent of the parties that the Management Agreement would not contradict or change the commitments and obligations of the Letter Agreement," and that "[p]laintiff understood that the Management Agreement, from a prospective basis, did not change any of the commit-

ments previously made by Vanteon in its Letter Agreement." Amended Complaint ¶¶ 57, 58. Plaintiff asserts that the Management Agreement should therefore either be reformed to include the provisions of the Letter Agreement, or rescinded, with plaintiff being compensated pursuant to the Letter Agreement. Defendant contends that plaintiff has not alleged any basis for such relief.

"The elements of a claim for rescission [under New York law] based on fraud are misrepresentation, concealment or nondisclosure of a material fact; an intent to deceive; and an injury resulting from justifiable reliance by the aggrieved party." *Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (citing *Channel Master Corp. v. Aluminium Ltd. Sales, Inc.,* 4 N.Y.2d 403, 406–07, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958)). In addition, under New York law "a contract can be reformed on the basis of mutual mistake if the writing does not accurately reflect the mutual intention of the parties." *Investors Ins. Co. of America v. Dorinco Reinsurance Co.,* 917 F.2d 100, 105 (2d Cir.1990). There is, however, "a 'heavy presumption' that a written agreement accurately reflects the true intention of the parties." *Id.* (quoting *Chimart Assocs. v. Paul,* 66 N.Y.2d 570, 573, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986)).

While it remains to be seen whether plaintiff can prove sufficient facts to prevail on this claim under a theory of either rescission or reformation, I cannot find at this stage that he has failed at least to state a claim upon which relief can be granted. The complaint does allege certain misrepresentations by Vanteon in the formation of the contract, as well as detrimental reliance by plaintiff, which suggests that there is at least a colorable basis for a claim for rescission. Plaintiff's ultimate burden to establish this claim will

be a substantial one, but given the minimal burden on plaintiff at this stage, I am not prepared to hold that under no set of facts could plaintiff prevail on this claim. Furthermore, since plaintiff's other claims are going forward, the prejudice to defendant by allowing this claim to survive as well will be minimal.

## V. Other Claims

Although defendant has moved to dismiss the entire complaint, defendant's papers do not even address the merits of plaintiff's remaining claims, specifically the sixth through ninth causes of action, which are generally based on the Management Agreement. In fact, at page two of its reply brief, Vanteon concedes that "[t]o the extent that the Plaintiff can assert a cause of action for an alleged breach of the Management Agreement, although the Defendant contends that there has been no such breach, Plaintiff can at least plead his cause of action without being subject to dismissal for failure to state a claim upon which relief can be granted." Accordingly, defendant's motion to dismiss these causes of action is denied.

## CONCLUSION

Defendant's motion to dismiss the amended complaint (Docket Item 7) is denied.

IT IS SO ORDERED.