## FRANK SINGER, Plaintiff, *v.* LOUIS KARRON, Defendant.

Municipal Court of New York, Borough of Manhattan, First District,
March 19, 1937.

■■■■■■■■■■■■

*Pariser & Pariser* [*Milton Pariser* of counsel], for the plaintiff.

*Morris Stern* [*Emanuel Silverman* of counsel], for the defendant.

LAZARUS, J.    The plaintiff is engaged in a unique and nondescript business.    Apparently he was inspired by the provisions of section 134 of the Banking Law.

In substance, that section requires that during the first ten days of September in each year every bank shall report to the Superintendent of Banks a true statement of all deposits made with the bank and all dividends declared and interest accrued, which on the first day of August preceding such report amount to fifty dollars or over and have remained unclaimed for five years then next preceding.    It also requires that every bank which reports unclaimed deposits, dividends or interest under the provisions of this section, shall cause to be published in a newspaper designated by the Superintendent and published in the city in which the bank is located, a true copy of such report, exclusive of the verification and amounts due depositors.

The opening entry in defendant's account with Manufacturers Trust Company (Special Interest Department) is dated July 1, 1929, and shows that he had to his credit the sum of $143.68.    No deposits or withdrawals were made for a little over five years.    In September, 1936, pursuant to the foregoing statute, defendant's account was published as an unclaimed deposit.

As a result of correspondence initiated by the plaintiff, the defendant signed the following retainer agreement prepared by the plaintiff:

" I, the undersigned, being informed by Frank Singer of 45 John Street, New York, that he has information which he believes will lead to the recovery of certain money to which I may be entitled, dating to about the year 1919 when I resided at 779 New Jersey Avenue, Brooklyn, New York, and being desirous of recovering the said funds by reason thereof, hereby employ the said Frank Singer to furnish the said information and to arrange for and make the said recovery and I hereby agree to pay the said Frank Singer, immediately upon recovery, fifty (50%) per cent of any amount actually recovered as a result of the said information.

" I hereby state that I have no information regarding any money to which I may be entitled from any source whatever dating to about the year 1919 when I resided at 779 New Jersey Avenue, Brooklyn, as hereinabove described and which money is now held by some other party or parties, except that I shall not be obligated

to the said Frank Singer for any services or any expenses in the event the said money or the recovery thereof shall have any connection with any money due or owing to me from any of my relatives or from any members of my family or friends, or from the regular course of my present business.

" It is understood that I shall not be obligated to the said Frank Singer for any services or any expenses, in the event no recovery is possible or can be made as a result of the said information."

Upon receipt of this retainer the plaintiff wrote to defendant informing him of the existence of the foregoing bank account which, with accrued interest, then amounted to $175.04.

In this action the plaintiff claims performance, and seeks to recover fifty per cent of $175.04.

It seems the plaintiff's business is not *per se* illegal. (Cf. *Neander* v. *Tillman*, 232 App. Div. 189.)

Under our system of law, the products of ideas of inventive genius may be protected for a limited period by copyright or patent-right law. However, the originator or possessor of naked ideas or information, if they are not susceptible of sale or use without disclosure, cannot protect himself except by some contract which will guard, regulate and compensate the disclosure.

And so, it is well settled that information may be a valid consideration for a promise to pay for it, and may be the subject of bargain and sale, or of contract. (*Bristol* v. *Equitable Life Assur. Soc.*, 132 N. Y. 264; *Keller* v. *American Chain Co., Inc.*, 255 id. 94; *Haskins* v. *Ryan*, 75 N. J. Eq. 330, 332; 78 A. 566.)

However, to constitute a valid consideration, the information must be new or novel and valuable, or thought to be so. (*Shapiro* v. *Press Publishing Co., Inc.*, 235 App. Div. 698; *Soule* v. *Bon Ami Co.*, 201 id. 794.)

On the facts, I am satisfied that the defendant was fully aware of the existence of his bank account, and that the information disclosed by the plaintiff was of no value to the defendant. The defendant produced the pass book on the trial, and there is no claim here that it was lost or mislaid. Hence, while the agreement recited a valid consideration, the plaintiff must go down to defeat because of a complete failure of consideration.

Approaching the problem from a different angle, we arrive at the same result.

As we have seen, the nature of the title to ideas and information is a qualified property. While it may be assumed that the defendant intended to take some chances, yet, clearly, he also intended to receive some species of property of value. There is an implied warranty of title in the sale of personal property. (*Flandrow*

v. *Hammond*, 148 N. Y. 129, 133.) Any reasonable person in the position of the defendant would have so interpreted the retainer agreement. (Cf. 1 Williston on Contracts [Rev. ed.], § 94.) Certainly the defendant did not simply intend to agree to divide his bank account with the plaintiff, a perfect stranger.

But the defendant was fully aware of the existence of his bank account, and the information which plaintiff disclosed to him was not new or novel or valuable. In such information, the plaintiff had no title or property right whatever. And so, again, this is not merely a case of inadequacy of consideration; the failure of title constitutes a failure of consideration. (*Flandrow* v. *Hammond*, 148 N. Y. 129, 133, 134.)

There are additional reasons why plaintiff cannot prevail in this action.

In view of the law relating to ideas and information, the plaintiff was justified in withholding his information until after the defendant agreed to compensate him for disclosing it. However, the plaintiff was not justified in inveigling the defendant into an agreement by half truths. In *Gluckstein* v. *Barnes* (L. R. [1900] A. C. 240, 250, 251) Lord MACNAGHTEN said that " it is a trite observation that every document as against its author must be read in the sense which it was intended to convey. And everybody knows that sometimes half a truth is no better than a downright falsehood."

In the retainer agreement as well as in the correspondence which preceded it, the plaintiff represented that he had information which would lead to the " recovery " of certain money to which the defendant was entitled, " dating to about the year 1919 when I (defendant) resided at 779 New Jersey Avenue, Brooklyn, New York," and that he would " arrange for and make the said recovery."

This offer came to the defendant in September, 1936. We know now that it referred to an account which was reported and published only because no deposits or withdrawals were made since July 1, 1929.

As a reasonable person, the defendant had a right to assume that the plaintiff had certain information with respect to the rights of the defendant, of which the latter was unaware; that it had an intimate relation to the year 1919; and that such information would lead to a " recovery " by the defendant of certain damages or money, by some formal legal process. Certainly, the word " recovery " did not express or imply that defendant already was in possession of an undisputed right to the balance in his bank account standing to his credit. (Cf. *Monterey County* v. *Cushing*, 83 Cal. 507, 512; 23 P. 700.)

Obviously this business cannot thrive in an atmosphere of candor and frankness. The language used by the plaintiff was calculated to conceal rather than to reveal his understanding of the transaction which he proposed. The nature of plaintiff's business makes this understandable. However, in doing as he did, he ran the risk of entering into a *nudum pactum* instead of a contract.

In the Restatement of the Law of Contracts (Vol. 1, § 71) the following rule is laid down: "(c) If either party knows that the other does not intend what his words or other acts express, this knowledge prevents such words or other acts from being operative as an offer or an acceptance."

This rule is quoted with approval in 1 Williston on Contracts ([Rev. ed.], § 95), and represents the law in this State. (Cf. *Hughes* v. *Mercantile Mutual Ins. Co.*, 55 N. Y. 265.)

The foregoing rule is really another way of saying that " nothing is consideration that is not regarded as such by both parties " (*Fire Ins. Assn.* v. *Wickham*, 141 U. S. 564, 579; 12 S. Ct. 84, 88; 35 L. Ed. 860), and that " Promisor and promisee must have dealt with it as the inducement to the promise." (*McGovern* v. *City of New York*, 234 N. Y. 377, 389.)

In short, the manifestation of mutual assent to the terms of the retainer is not real, and, in fact, it is without consideration.

Judgment for the defendant dismissing plaintiff's complaint.