**CUSTOM IMPORTS, INC., Plaintiff,**

v.

**HANMEE TRADING CO., INC., Jae D. Song, Defendants.**

**No. 83 Civ. 2334 (IBC).**

United States District Court,
S.D. New York.

June 19, 1984.

---

Anderson, Russell, Kill & Olick, P.C., New York City, for plaintiff; John E. Daniel, Adrienne M. Coffin, New York City, of counsel.

Jhinu C. Jung, New York City, for defendant; Martin Sulkow, P.C., New York City, of counsel.

1. Throughout this opinion, the letters "Tr." followed by a number in parentheses indicate a

## OPINION

IRVING BEN COOPER, Senior District Judge.

Plaintiff, a Nevada corporation and the owner of United States Copyright Registration Number VA 67–398 for a long-arm monkey puppet, instituted this action to recover damages for alleged breaches of several agreements by defendants, Hanmee Trading Co., Inc. ("Hanmee"), a New York corporation, and Mr. Jae D. Song, president and sole shareholder of Hanmee. The case was tried to the Court on November 7 and 8, 1983. We reserved decision at the conclusion of the trial and now find defendants wholly liable for breaches of contract.

## FACTS

The present dispute stems from a prior contest that the parties for considerable time had amicably resolved. In November of 1982, Hanmee began importing a specific type of monkey puppet into the United States. The puppet was characterized by its fluffy exterior, its long arms and legs which had Velcro (an adhesive often used on cloth products) on hands and feet. The operator could wrap the puppet's arms around the neck and stick the hands together by using the Velcro; likewise, the legs wrapped around the operator's waist and the feet stuck together. The puppets had squeaking horns in the throat area enabling them to "talk."

Hanmee's monkey puppets were impounded by the United States Customs Service when in November 1982 they arrived in the United States because another company, plaintiff herein, already owned a copyright in the product. Thereupon Hanmee instituted an action against plaintiff and the Customs Service under 28 U.S.C. §§ 1331 and 1338 to release the allegedly infringing puppets. (Joint Pre-Trial Order, ¶¶ 5, 6, at 2–3) On November 24, 1982 (before trial) the parties entered into a settlement agreement (Ex. 1A)[1] which provided,

particular page number in the trial transcript.

in relevant part to immediately (1) execute a general release in favor of Custom Imports; (2) enter into a Copyright License Agreement between the parties; (3) execute a guaranty by defendant Song; and (4) stipulate to dismiss with prejudice all of Hanmee's claims against Custom Imports.

On that same date, the Copyright License Agreement ("License Agreement") (Ex. 2) was executed. It provided, *inter alia,* that Hanmee: (1) acknowledged the validity of the copyright and agreed not to challenge its validity; (2) agreed to pay plaintiff a royalty of four dollars per dozen on infringing monkey puppets imported into the United States between September 1 and December 31, 1982; (3) advise plaintiff seven days in advance of the scheduled arrival of any infringing puppets imported by Hanmee; (4) immediately supply plaintiff with a copy of all shipping and United States Customs Service documents relating to the infringing puppets; (5) would make sworn, written reports confirming the number of infringing puppets imported as well as written statements that no other such puppets had been imported; (6) keep accurate records and allow Custom Imports' representatives to inspect its books and records in order to verify accuracy; (7) was prohibited from importing infringing puppets into the United States after January 1, 1983; and (8) that Custom Imports would be entitled to recover all payments called for by the License Agreement as well as reasonable attorneys fees, costs and interest in the event of breach.[2]

The Guaranty of Performance ("Guaranty") (Ex. 4) was executed by Mr. Song on November 24, 1982. It guaranteed the full and timely performance of Hanmee pursuant to the provisions of the License Agreement, *including all payments due as well as attorneys fees and costs for breach of the* agreement. Song further agreed to be sued by Custom Imports with or without joining Hanmee and without first or contemporaneously suing Hanmee or otherwise seeking to collect from the company.

On an undated and unsigned paper sent by Hanmee to plaintiff sometime after December of 1982, *i.e.,* after the contract deadline date for importation of infringing monkey puppets, Hanmee listed the quantities and dates of puppets imported during the contract period. (Ex. 15) The list showed a total of 6,839 dozen puppets for which $27,356.00 was paid in royalty payments.[3] The invoices for the sale of these puppets listed the model numbers as Hanmee style numbers 833M, 833SM, 731, 731S, 334, and 334S. Plaintiff and defendants dispute whether these numbers refer to a type or a size of puppet. After reviewing the Hanmee catalogues (Exs. 16, 17), we find that the three different numbers reflect different colors of the monkey puppet and these particular letters (i.e., "M," "SM," "S" or the lack of any letter following the number) reflect various sizes.

In late January to early February 1983, plaintiff's president, Carl Bai, travelled to Seoul, Korea and learned through a representative of a large Korean export company that Hanmee was still importing the monkey puppets (Carl Bai Affidavit in Support of Preliminary Injunction). Thus, by letters dated December 10, 17 and 30, 1982, January 28, and March 18, 1983, plaintiff informed Hanmee that the latter was defaulting, particularly with regard to Hanmee's obligations to make and deliver written reports confirming the number of infringing puppets that had been imported, the failure of Hanmee to execute its general release in favor of Custom Imports, and the refusal of Hanmee to allow Custom

---

The same applies to an "Ex." which refers to a specific exhibit.

**2.** A rider to the License Agreement was also executed on November 24, 1982. It required plaintiff and/or its attorneys to give Hanmee and its attorneys five days written notice of default before taking any action to enforce any of the agreements. (Ex. 3) Both parties agree

that the plaintiff acted in accordance with this provision in the rider before instituting the instant action. Joint Pre-Trial Order, ¶ 18, at 7.

**3.** The invoices for these puppets were marked at trial as Exhibits 25, 25A, 25B, 26, 26A, 26B, 27, 27A, 27B, 28, 28A, 28B, 22F, 22G, 22H, 22I, 23D, 23E, and 23F.

Imports its right under the License Agreement to inspect Hanmee's books and records in connection with the importation of monkey puppets. (Exs. 6, 8, 10, 11, and 14); Joint Pre-Trial Order, ¶ 18, at 7).

On March 25, 1983, Judge Weinfeld signed an order to show cause enjoining defendant from either disposing of the puppets in any way or the documents relating to the puppets; requiring defendants to impound all puppets imported after January 1, 1983 pending the outcome of this action; accounting for all monkey puppet imports since September 1, 1982; permitting plaintiff to inspect defendants' books and records concerning purchase, sale, importation, transfer or location of monkey puppets; permitting plaintiff to make copies of documents; and promoting discovery by ordering the deposition of defendant Song on a particular date and time. The order granting a preliminary injunction was filed on April 12, 1983 together with an oral opinion previously filed.

Pursuant to Judge Weinfeld's order, plaintiff attempted to inspect the material documents. Plaintiff and defendants contest whether defendants did, in fact, show such documents to plaintiff. Based on the total trial record and the strong impression made on us by John E. Daniel, Esq., plaintiff's attorney and witness, we find that plaintiff was not given for examination all the relevant documents. Plaintiff then reviewed thousands of purchase orders and learned that there were more sales than imports accounted for. Mr. Song still refused to give plaintiff the key documents, whereupon plaintiff subpoenaed both Hanmee's bank, Marine Midland Bank, and a shipper Hanmee used in order to collect documents demonstrating the defendant's monkey puppet imports. The documents showed imports about which Hanmee had never informed plaintiff. Plaintiff confronted Hanmee with this information and finally Hanmee capitulated to giving plaintiff invoices and other pertinent shipping documents. (Tr. 7–8) The invoices listed descriptions such as "SM." or "LG. HG. MONKEY" (Exs. 19I, 20B) and "HUGGING MONKEY" (Exs. 21D, 21I, 21E,

22F, 23D, 24D) adjacent to one of six style numbers, *i.e.*, 833M, 833SM, 731, 731S, 334, or 334S.

Desirous of an explanation, plaintiff scheduled a deposition of Mr. Song. The date was adjourned twice, and on the date ultimately set (approximately August 26, 1983) (Tr. 111), Mr. Song did not appear. The parties then appeared before Magistrate Buchwald who directed the defendant to appear at the next scheduled deposition. Mr. Song appeared and explained that at least some of the imports arrived in Los Angeles before September 1, 1982 (the date on which defendants had to begin paying royalties to plaintiff) and then were sent to New York where they arrived on September 7. (Tr. 9–10) The explanation conflicted with the form prepared by Hanmee's customs broker, Mr. Simon Byun, who recorded "September 7, 1982" as the date of importation. (Ex. 33C)

Mr. Song further explained that the products that were shipped were not infringing monkey puppets but rather were other non-infringing puppets. (Tr. 11, 27) He deposed that the order had been changed and that the invoices did not reflect that change since such an alteration would cause delays. (Tr. 11) Plaintiff requested documents supporting Mr. Song's explanation, but, with the exception of a one sheet inventory report from January 1983 given to plaintiff three days before the trial, they were not produced.

On November 7, 1983, the first day scheduled for trial, plaintiff moved to dismiss defendants' affirmative defenses and counterclaims and to impose sanctions under Fed.R.Civ.P. 37 in connection with defendants' defense that the puppets imported were different from those covered in the License Agreement. We heard oral argument and, on November 8, granted plaintiff's motion. We stated, *inter alia:*

> Granting plaintiff's motion to dismiss precludes defendants from introducing any proof as to duress or the invalidity of the copyright, the invalidity of the

settlement agreement and the invalidity of the copyright license agreement.

Granting plaintiff's motion for sanctions pursuant to FRCB [sic] 37b2b precludes defendants from introducing any proof on their 'switched products' defense.

(Tr. 47–48)

Thus, the only questions left open are: (1) Were the Settlement Agreement, License Agreement, and Guaranty breached? (2) If so, what are the damages?, and (3) If the agreements were breached, how much attorneys fees and costs is the plaintiff entitled to?

THE LAW

### 1. *Breach of Contract*

■■■ At the outset, we find that the Settlement and License Agreements signed by Hanmee and the Guaranty executed by Mr. Song are valid and binding contracts. In New York as elsewhere,[4] it is beyond cavil that the failure of a party to perform its obligations under a valid and binding contract constitutes a breach and entitles the other contractually bound party to damages which arose out of the breach. *See McCaffrey v. Strainer*, 81 A.D.2d 977, 439 N.Y.S.2d 773, 775 (3d Dept.), *appeal dismissed*, 55 N.Y.2d 700, 431 N.E.2d 308, 446 N.Y.S.2d 947 (1981); *Manufacturers and Traders Trust Co. v. Cottrell*, 71 A.D.2d 538, 422 N.Y.S.2d 990, 993 (4th Dept.1979).

We find that defendants breached their contractual obligations in the following respects: (1) In this action, defendants challenged the validity of the copyright. Although paragraph 2 of the License Agreement prohibited such a challenge, defendants argue that the agreement was signed under duress and counterclaim that the copyright was not valid.

These defenses, however, are moot; as already mentioned, on the second day of trial we granted plaintiff's motion to dismiss defendants' affirmative defenses and

counterclaims, thereby precluding them from introducing evidence on duress or invalidity of the copyright. Although we invited the defendants to file a memorandum within a week from November 8, 1983, the date on which we granted plaintiff's motion (despite defendants' failure to make such a request) (Tr. 48), the only paper submitted that addressed this issue was defendants' Post Trial Memorandum, filed with the Court on December 6, 1983. Based on the totality of evidence adduced at trial and the papers submitted afterwards, we are compelled to stand on our order of November 8. Thus, the challenge by defendants of the copyright validity constituted a breach of contract.

(2) Defendants failed to immediately supply plaintiff with copies of all shipping and United States Custom Service documents relating to the infringing monkey puppets, thus breaching paragraph 5b of the License Agreement. Since defendants were precluded from introducing proof demonstrating that the imported products did not infringe, and since we find that the style numbers listed in the originally unaccounted for invoices of defendants' imported products described as "HUGGING MONKEY," or "SM." or "LG. HG. MONKEY" (Exs. 19I, 20B, 21D, 21I, 21E, 22F, 23D, 24D) correspond exactly to the style numbers listed in Hanmee's catalogues next to pictures of white, tan and brown furry hugging monkey puppets protected from infringement by the License Agreement (Exs. 16, 17), we entertain no hesitancy in concluding that unreported infringing puppets were imported, the shipping and Customs documents of which were never turned over to plaintiff.

Furthermore, although Mr. Song contends that at least some of the products arrived in Los Angeles prior to the contract commencement date of September 1, 1982, we find that the date recorded on the form prepared by Hanmee's customs broker, Mr. Simon Byun, *i.e.*, September 7, 1982, is

---

**4.** All of the agreements provided that the law of the State of New York would govern any actions which might arise under the agreements.

dispositive of the actual date of importation. Therefore, the products included on the shipment which were recorded as arriving in the United States on September 7, 1982 were subject to the provisions in the License Agreement. Thus, Hanmee was contractually required to supply plaintiff with copies of these and subsequent shipping and Customs documents relating to style numbers 833SM, 833M, 731, 731S, 334, and 334S hugging monkey puppets, all of which they failed to do.

(3) Hanmee also failed to make sworn, written reports regarding the number of imported infringing monkey puppets. This failure constituted a breach of paragraph 5c of the License Agreement.

(4) Paragraph 5e of the License Agreement provided that Hanmee would keep accurate records and allow plaintiff's representatives to inspect relevant books and records to verify such accuracy. Defendants refused to allow representatives of plaintiff access to much of this material information, thereby breaching this provision.

(5) Paragraph 2 of the Settlement Agreement provides that Hanmee would immediately execute a general release in favor of Custom Imports. Both plaintiff and defendants stipulated that the release was never executed. (Tr. 61)

(6) In total, the importation of 6,224 dozen infringing monkey puppets from September 1 to December 31, 1982 was not reported to plaintiff and thereby constituted a breach of the License Agreement. Defendant was required to pay plaintiff four dollars per dozen in royalties (paragraph 3 of the License Agreement); accordingly, $24,896.00 is still due.

■ In sum, we find that Hanmee breached six vitally different provisions of the Settlement and License Agreements. Paragraph 10b of the License Agreement provides that in the event of breach, plaintiff is entitled to recover all payments set forth in the agreement. Thus, Hanmee owes plaintiff $24,896.00 in royalty payments and, by virtue of the Guaranty of Performance, Mr. Song is also liable in that payment.

### 2. *Attorneys Fees and Costs*

Paragraph 10b of the License Agreement also provides that the plaintiff is entitled to recover reasonable attorneys fees, costs and interest in case defendants breach the provisions of the agreement.

Plaintiff presented a meticulously detailed accounting of attorneys fees and disbursements expended. Time records specifying the work that was done and the amount of time expended were kept by each attorney. (Ex. 45C) This information was then transcribed onto computer printouts (Exs. 45A, 45B) which each attorney compared with his or her original records. (Tr. 72–79)

■ We have reviewed the long lists of services rendered by members of the firm representing plaintiff, Anderson Russell Kill & Olick, P.C., and conclude that the services performed and disbursements incurred are reasonable. In this regard, we take particular note of several facts supporting our conclusion: (1) the lawsuit was not commenced until five letters of default of contractual obligations had been sent by plaintiff to defendants (Exs. 6, 8, 10, 11, 14; Tr. 5–6, 67–68); (2) a paralegal and an attorney billed at a comparatively low rate at the law firm were assigned where possible instead of lead counsel (Tr. 6–7, 70–71, 79–80); and (3) defendants' refusal to cooperate by providing all the relevant documentation required an expenditure for additional legal services. We conclude that under paragraph 10b of the License Agreement, defendant Hanmee and its guarantor, Mr. Song, are respectively liable in the sum of $29,900.74 for legal services incurred by reason of the breach of the Settlement and License Agreements.

### CONCLUSION

On the basis of the facts and the law applicable thereto as recited herein, we are constrained to, and do, direct Hanmee or Mr. Song to pay plaintiff the sum of the royalty payments due under the contract,

$24,896.00, and the reasonable attorneys fees and disbursements, $29,900.74, a total of $54,796.74, together with interest and costs.

SO ORDERED.