**EZ–TIXZ, INC., Plaintiff,**

v.

**HIT–TIX, Eric Krebs Theatrical Management, Inc., Paul Morer Productions, Inc., Eric Krebs and Paul Morer, Defendants.**

No. 93 Civ. 3791(JGK).

United States District Court, S.D. New York.

July 2, 1997.

David L. Just, Donald C. Lucas, Lucas & Just, New York City, for Plaintiff.

A. Joseph Tandet, New York City, Charles H. Knull, New York City, for Defendants.

## OPINION AND ORDER

KOELTL, District Judge.

The plaintiff EZ–TIXZ, Inc. ("EZ–TIXZ") sued Hit–Tix, Inc. ("Hit–Tix"), Eric Krebs Theatrical Management, Inc. ("EKTM"), Paul Morer Productions, Inc. ("PMPI"), Eric Krebs, and Paul Morer for copyright infringement, the breach of a contractual obligation to make royalty and license payments, the non–payment of fees for service calls, the breach of an agreement to design a mailing list, and the misappropriation of trade secrets. The defendants denied the plaintiff's allegations and asserted counterclaims for the making of fraudulent representations and for breach of contract.

From June 9, 1997 to June 11, 1997, the parties tried this case to the Court in a non-jury trial. At the outset of the trial, the plaintiff withdrew its claim for misappropriation of trade secrets. (Trial Transcript ("Tr.") at 11). At the close of trial, the defendants stipulated to liability, in the amount of $2,250.00, plus interest, for their non–payment of fees for service calls. (Tr. at 477; Plaintiff's Exhibit ("PX") 99).

Pursuant to Federal Rule of Civil Procedure 52, having reviewed the record and assessed the credibility of the witnesses, the Court makes the following Findings of Fact and reaches the following Conclusions of Law.

## FINDINGS OF FACT

1. EZ–TIXZ is a Florida Corporation with its principal place of business in Palm Harbor, Florida. (Joint Pre–Trial Order Undisputed Facts ("UF") at 3). EZ–TIXZ was assigned all rights to the computer system installed on Hit–Tix's computer ("the System") by Studnicka, Jaufmann & Associates ("SJA"). (PX 120 at ¶ 10). SJA was formed by Stephen Studnicka and Edwin Jaufmann, and was assigned the copyright to the System by Studnicka.[1] (*Id.*).

2. EZ–TIXZ is the owner of a copyright to the System pursuant to a Certificate of Registration issued effective as of March 5, 1993 by the United States Copyright Office. (PX 1.1). On July 13, 1995, EZ–TIXZ filed a supplemental copyright application to correct the year listed as the year of the System's creation. (PX 1.2). The supplemental registration was effective July 31, 1995.

3. Hit–Tix is a New York corporation with its principal place of business at 450 West 42nd Street in New York, New York. (UF at 3).

4. EKTM is a New York corporation with its principal place of business at 450 West 42nd Street in New York, New York. (UF at 3). EKTM owns 50% of Hit–Tix. (UF at 4).

5. Krebs, a New Jersey resident, is a shareholder in EKTM and an officer of Hit–Tix. (UF at 3–4).

6. PMPI is a New Jersey corporation. (*Id.* at 3). PMPI owns 25% of Hit–Tix. (UF at 4).

7. Morer is a shareholder in PMPI and an officer of Hit–Tix. (UF at 4).

8. Gail Bell was the president of Hit–Tix at its inception, and became an officer and shareholder of EZ–TIXZ on or about August 1991. (UF at 4).

9. During its years of operation, Hit–Tix was engaged in the business of telephone order theater ticket sales. (UF at 3). When Hit–Tix was first formed, the records regarding its ticket sales were kept manually. (Defendant's Exhibit ("DX") XX at ¶ 1). Some time later, Morer and Bell decided to computerize this record–keeping process. (DX XX at ¶ 2; PX 122 at ¶ 4). Hit–Tix acquired a computer and a "Paradox" software package to keep track of ticket orders. (DX XX at ¶ 2; PX 122 at ¶ 4). However, after approximately one year, Hit–Tix's computer needs had outgrown the capacity of the Paradox system and Hit–Tix decided to hire a computer consultant to expand its system. (DX XX at ¶ 2; PX 122 at ¶ 4).

---

1. The defendants dispute the validity of these assignments. However, given the findings and conclusions reached below, this Court need not address this issue.

10. Morer and Bell approached Studnicka about upgrading Hit–Tix's computer system. (DX XX at ¶ 2; PX 122 at ¶ 5). In a letter dated March 23, 1988, Studnicka transmitted to Hit–Tix his proposal for expanding the capacity of Hit–Tix's computer system. (PX 65).

11. The proposal for a customized computer system states that the cost of the system would be $2,100, which included "all time spent for programming, meetings, installation, debugging, and training until the system is deemed operational by yourselves (and represented so by final payment.)" (PX 65 at 4). According to the proposal, the cost also included "[u]nlimited on–site support of user or training problems for 30 days after implementation. After the 30th day, these services will be billed at $35/hour.... Enhancements or changes to the program will be billed at a rate of $35/hour, or on a project basis, whichever is appropriate." (*Id.*). The agreement does not provide for any payments beyond the initial $2,100 (other than charges specifically provided for such as subsequent service and enhancements which were to be separately billed) and does not provide for ongoing royalty payments or license fees. (*Id.*). Hit–Tix was actually invoiced for some service calls, and paid for some but not all of these calls. (Tr. at 202 [Studnicka] ).

12. Under the heading "Copyright," the proposal provides that "[a]ny materials, programs or software developed for this project remain [Studnicka's] copyrighted property." (*Id.* at 5). This section of the proposal also states that Studnicka agrees "to divide any profits from the sale of this application realized after packaging, production and marketing costs with HIT–TIX, Inc. on a 50–50 basis and to provide a complete listing of licensed users upon demand." (*Id.*). Finally, this section sets forth that "[a]ny enhancements or programming changes to the program will be provided to Hit–Tix, Inc. at no additional charge." (*Id.*).

13. The proposal was signed by Studnicka, but not by any representative of Hit–Tix. (*Id.* at 7). Despite the fact that Hit–Tix never signed the proposal, both sides acted in conformity with the terms of the proposal.

(Tr. at 218 [Studnicka]; DX XX at ¶ 3). Studnicka installed the System on Hit–Tix's computers in November of 1988, (DX XX at 4; PX 120 at ¶ 12), and Hit–Tix paid Studnicka $2,100 in three equal installments. (PX 3; PX 120 at ¶¶ 10, 12, 16; PX 122 at ¶¶ 7, 8, 12).

14. The plaintiff has not asserted that any written agreement modified the terms of the original proposal or provided that Hit–Tix would pay Studnicka more than the original $2,100. (Tr. at 200 [Studnicka] ). At trial, Studnicka testified that he had ongoing discussions with Morer about Hit–Tix paying additional money for the continued use of the System, but that no dollar amounts were ever discussed. (Tr. at 201 [Studnicka] ). Studnicka testified that Morer was aware that additional fees would have to be paid, but Studnicka did not testify that any explicit agreement regarding such fees had been reached between the parties. (Tr. at 200, 205 [Studnicka] ).

15. Jaufmann, who started working with Studnicka on the System in 1988, testified that it was his understanding that at some point, Hit Tix, if it continued to use the System after the completion of the System's testing, would pay royalty fees. (PX 119 at ¶ 7). He further testified that in June and October of 1990 he communicated to Hit–Tix's officers that if Hit–Tix was to continue to use the System it would have to pay royalties. (PX 199 at ¶ 13). However, Jaufmann testified that Hit–Tix did not agree to pay any royalties. (PX 119 at ¶ 13; Tr. at 127 [Jaufmann] ).

16. The defendants deny ever agreeing to pay any fees in addition to the original $2,100. Krebs testified credibly that Hit–Tix had paid the $2,100 with the understanding that it was purchasing the right to use the System indefinitely. (DX VV at ¶ 22). Morer also testified credibly that he refused to pay additional fees for the use of the System because it had not been part of the parties' original agreement. (DX XX at ¶ 7). Any testimony by EZ–TIXZ's witnesses that there was an "understanding" to pay an additional royalty or maintenance fee was not credible, and was inconsistent with the terms of the parties' original agreement. Any such

testimony was also inconsistent with the parties' actual performance, which was consistent with the original written proposal.

17. EZ–TIXZ failed to submit any credible evidence at trial that Hit–Tix had ever actually agreed to pay more than $2,100 for the ongoing use of the System. While the plaintiff argues that it is "ludicrous" to believe that Studnicka and Jaufmann agreed to accept $2,100 as the total payment for the development, installation, and continued use of the System, Studnicka and Jaufmann themselves received considerable benefit from the installation of the System on Hit–Tix's computers. The use of Hit–Tix as a test site allowed Studnicka and Jaufmann to test and "de–bug" the System under actual working conditions. (PX 119 at ¶ 8). Moreover, Studnicka and Jaufmann hoped to use Hit–Tix as a reference to convince other potential customers to buy the System. (Tr. at 460 [Jaufmann]).

18. Moreover, while Jaufmann and Studnicka both testified that they started discussing additional payments with Hit–Tix at least as early as 1990, they made no effort to remove the System from Hit–Tix's computers when Hit–Tix refused to make additional payments. (Tr. at 459 [Jaufmann]). In fact, it was Hit–Tix itself that decided to remove the System from its computers in 1993. (DX XX at ¶ 10). Moreover, when Jaufmann and Studnicka finally did ask Hit–Tix to sign a written license agreement, they only sought payment for use of the System after December 1, 1992. (DX P).

19. On October 22, 1991, SJA and Hit–Tix entered into a written agreement ("the Agreement"), under which SJA would design a computer system to generate mailing lists for Hit–Tix. (PX 64). Neither party contends that this agreement had any bearing on the parties' arrangement regarding Hit–Tix's payment for use of the System. Under the Agreement, Hit–Tix agreed to pay $2,425.00 upon the Agreement's execution. (*Id.* at 5). EZ–TIXZ made this payment. (DX VV at ¶ 46). Hit–Tix also agreed to pay an additional $2,075 upon completion of the mailing list system. (PX 64).

20. Under the Agreement, Hit–Tix agreed to provide information to SJA. Hit–

Tix promised to give SJA some of its computer files. (*Id.* at 3). Hit–Tix also agreed to provide functional requirements to SJA "with assistance from SJA." (*Id.* at 3).

21. It is undisputed that the mailing list system was never completed and that the final payment due upon completion of that system was never made. (DX VV at ¶¶ 45–46; Tr. at 446–48 [Jaufmann]). The plaintiff asserts that the defendants failed to provide the functional requirements needed to complete the system. (Tr. at 447 [Jaufmann]). The defendants contend that they did provide SJA with oral specifications, but SJA was unable to make the system work, and Hit–Tix never pursued the matter. (Tr. at 362 [Morer]).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action pursuant to 17 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1331, 1338, 1367.

## BREACH OF THE CONTRACT FOR THE SYSTEM

2. "A valid contract requires a manifestation of mutual assent to a bargained–for exchange." *Mizuna, Ltd. v. Crossland Federal Savings Bank,* 90 F.3d 650, 658 (2d Cir.1996); *see also Ostman v. St. John's Episcopal Hospital,* 918 F.Supp. 635, 643 (E.D.N.Y.1996). "Without agreement, express or implied in fact, there can be no contract. Without a contract there can be no breach of the agreement or a failure to perform the contractual duty with care." *Franklin v. Carpinello Oil Co., Inc.,* 84 A.D.2d 613, 613, 444 N.Y.S.2d 248, 249 (3d Dep't 1981). A mere request, without agreement by the other party, does not constitute a contract. *See Platt v. Portnoy,* 220 A.D.2d 652, 653, 632 N.Y.S.2d 659, 661 (2d Dep't 1995).

3. The only contractual agreement entered into between the parties with regard to the System was the initial agreement outlined in Studnicka's March 23, 1988 proposal. Although the proposal was never signed by Hit–Tix, the parties clearly demonstrated by their conduct their intent to be bound by the terms of that proposal. Studnicka installed the program he designed on Hit–Tix's computers in November of 1988. In return, Hit–

Tix paid the $2,100 price set forth in the proposal. Thus, both parties performed their obligations under the proposal.

4. The plaintiff asserts that it never intended to allow Hit–Tix to use the System indefinitely for only $2,100. The plaintiff argues both that it was implied in the original proposal that Hit–Tix would pay an ongoing fee for the use of system, and that Hit–Tix orally agreed to pay such additional fees subsequent to Studnicka's transmission of the proposal.

5. The plaintiff has failed to provide any credible evidence that Hit–Tix ever agreed to pay any ongoing license fee or maintenance fee in addition to the original fee of $2,100. It is undisputed that the parties did not enter into any written agreement regarding the System after the transmission of the proposal. While Studnicka and Jaufmann both testified that they had ongoing discussions with officers of Hit–Tix about Hit–Tix's paying additional fees, neither could point to a specific conversation or specific agreement between the parties. The defendants have credibly denied ever agreeing to pay any additional fees. Any such purported agreement would have been inconsistent with the terms of the written proposal and with the parties actions subsequent to that proposal. It is clear that while the plaintiff requested additional payments, the defendants never agreed to this proposal.

6. The plaintiff has also failed to show that an obligation to pay additional fees was implied in the initial proposal. The plaintiff argues that additional payments were implied in the proposal because it is "ludicrous" to believe that Studnicka and Jaufmann agreed to accept $2,100 as total payment for the development, installation, and Hit–Tix's continued use of the System.

7. Studnicka only sought $2,100 because he believed he would receive non–monetary benefits from the arrangement. For example Studnicka needed to test the System under actual business conditions. Hit–Tix provided such an atmosphere. Moreover, Studnicka hoped that if the System worked successfully on Hit–Tix's computers, Hit–Tix could be used as a reference to convince additional customers to purchase the System.

8. The parties did agree that in return for a one–time payment of $2,100, Hit–Tix would receive from Studnicka the right to use the System. If Studnicka and Jaufmann had believed that the defendants had failed to live up to their contractual obligations, they would not have continued to let Hit–Tix use the System, nor would they have entered into the Agreement to develop the mailing list program, nor would they have proposed a new licensing agreement under which Hit–Tix would only begin to pay license fees in December, 1992. Thus, the plaintiff has failed to prove that the defendants breached any agreement in regard to the System, because the defendants never agreed to pay more than the original $2,100 fee.[2]

## COPYRIGHT INFRINGEMENT

9. The fact that the parties clearly did agree that in return for a one–time payment of $2,100 Hit–Tix would receive from Studnicka the right to use the System in perpetuity also bars the plaintiff from prevailing on its claim for copyright infringement. A claim for copyright infringement requires the plaintiff to show "copyright ownership and unauthorized copying by the defendants." *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir.1991); *see also ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir.1996).

10. Studnicka sold to the defendants the right to use the System for $2,100. The purchaser of a computer program has a right to use that program for its own business purposes. *Aymes v. Bonelli*, 47 F.3d 23, 25 (2d Cir.1995). Thus, the purchaser of a computer system cannot be held liable for a copyright violation for using that system, because its use of the system is not unauthorized. *See id.* Because Hit–Tix purchased the System from Studnicka, Hit–Tix has not violated the plaintiff's copyright.

---

**2.** The Court's finding that Hit–Tix is not liable for breach of contract also bars the plaintiff from recovering from the other defendants. For each claim brought by the plaintiff, liability is asserted against the other defendants only derivatively based on Hit–Tix's alleged breach.

## BREACH OF THE MAILING LIST CONTRACT

11. "In New York as elsewhere, it is beyond cavil that the failure of a party to perform its obligations under a valid and binding contract constitutes a breach and entitles the other contractually bound party to damages which arose out of the breach." *Custom Imports, Inc. v. Hanmee Trading Co., Inc.,* 596 F.Supp. 1126, 1130 (S.D.N.Y. 1984); *Manufacturers and Traders Trust Co. v. Cottrell,* 71 A.D.2d 538, 543, 422 N.Y.S.2d 990, 993 (4th Dep't 1979). The plaintiff asserts that the defendants breached the mailing list Agreement by failing to provide the functional requirements required to complete the system. The plaintiff therefore asserts that it is entitled to the final payment of $2,075 it was to receive under the contract. The defendants have counterclaimed for breach of the mailing list Agreement, contending that they did provide SJA at least with oral specifications, but SJA failed to complete the mailing list system. Hit–Tix seeks to recover profits it alleges it lost as a result of the EZ–TIXZ's failure to complete the system.

■ 12. Neither party has proved that it is entitled to any recovery for breach of the alleged mailing list agreement. EZ–TIXZ failed to deliver a completed mailing list system to Hit–Tix. While EZ–TIXZ blames Hit–Tix for failing to provide required specifications, it failed to present credible evidence that the information it did receive was insufficient to complete the mailing list program. Therefore, EZ–TIXZ is not entitled to prevail, because it has failed to prove that it complied with all of the provisions of the Agreement.

■ 13. Nor is Hit–Tix entitled to recover on its counterclaim. Hit–Tix plainly did have an obligation to provide EZ–TIXZ with information to complete the system, and Hit–Tix failed to present credible evidence that its degree of compliance with these obligations was sufficient to require further performance by EZ–TIXZ. Moreover, even if Hit–Tix had proven that EZ–TIXZ breached the Agreement, Hit–Tix failed to present any credible evidence that it suffered any damages. While Hit–Tix presented and relied upon the testimony of its principals that it could have earned a substantial profit by using the mailing list program, that testimony was wholly speculative and not credible in view of Hit–Tix's decision not to press EZ–TIXZ to complete the system.

## COUNTERCLAIM FOR FRAUDULENT MISREPRESENTATIONS

■ 14. In their counterclaim for fraud, the defendants assert that Studnicka and Jaufmann made representations that Hit–Tix would only be required to pay a one-time license fee, but subsequently demanded the payment of additional royalty and licensing fees. Under New York law, "a person who induces another to enter into a contract by making a promise which he has no intention of keeping may be held liable in damages for fraud." *DiRose v. PK Management Corp.,* 691 F.2d 628, 630 (2d Cir.1982), *cert. denied,* 461 U.S. 915, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983). "The essential elements of the injured party's cause of action are 'representation of a material existing fact, falsity, scienter, deception and injury.'" *DiRose,* 691 F.2d at 629 (citing *Channel Master Corp. v. Aluminum Limited Sales, Inc.,* 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958)); *see also Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80, 668 N.E.2d 1370, 1374 (1996).[3]

■ 15. At trial, the defendants only demonstrated that Studnicka and Jaufmann had not requested, prior to the implementation of Studnicka's proposal regarding the System, that Hit–Tix pay fees in addition to the original $2,100. The defendants failed to

3. Under New York law, a promise to perform a contract, by itself, cannot give rise to a fraud claim. However, a parties' misrepresentation about a collateral matter, during contract negotiations, may provide a basis for such an action. See *PI, Inc. v. Quality Products, Inc.,* 907 F.Supp. 752, 760–61 (S.D.N.Y.1995); *Sudul v. Computer Outsourcing Services,* 868 F.Supp. 59, 62–63 (S.D.N.Y.1994). It is not necessary to determine whether there were representations about a collateral matter because the defendants have failed to show any knowing false representations upon which they relied.

**226**

introduce any credible evidence that Studnicka and Jaufmann actually made any affirmative misrepresentations or promises that they would not seek such fees in the future. Nor did the defendants prove any other alleged misrepresentations. Thus, because they have not proved that the Studnicka or Jaufmann made misrepresentations or false promises, the defendants have failed to prove their counterclaim for fraud.

### CONCLUSION

The plaintiff is entitled to a judgment against the defendants for $2,250.00 for non–payment of fees for service calls. The plaintiff's remaining claims for breach of contract are dismissed. The plaintiff's copyright claim is dismissed. The defendants counterclaims are dismissed. The Court will enter Judgment consistent with this Opinion.

**SO ORDERED.**