**LOCATOR OF MISSING HEIRS, INC., Plaintiff,**

v.

**KMART CORPORATION, Defendant.**

No. 96–CV–285C(H).

United States District Court,
W.D. New York.

Jan. 5, 1999.

Falk & Siemer, LLP (Donald G. McGrath, of Counsel), Buffalo, New York, for Plaintiff.

Cohen & Lombardo, P.C. (Douglas S. Cream, of Counsel), Buffalo, New York, for Defendant.

## DECISION and ORDER

CURTIN, District Judge.

Before this court is plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56. (Item 19). Defendant cross-moves for summary judgment, seeking dismissal of plaintiff's complaint and the damages requested in its counterclaim (Item 21).

### Background

This case arises from a class action antitrust suit in the Northern District of Florida entitled *In Re: Infant Formula Class Action Antitrust Litigation* ("Infant Formula"). After several years of litigation, the class action suit, which had a large number of potential class plaintiffs, settled.

Plaintiff, Locator of Missing Heirs, Inc. ("Locator"), is a corporation engaged in the business of locating persons and companies which have unclaimed, outstanding, or abandoned monies or property, and assisting them in the recovery of such money or property in exchange for a percentage of the recovered funds. In July of 1993, Locator learned of the Infant Formula settlement and discovered that there were more than 3,000 missing claimants, including Kmart and its subsidiaries, PACE Membership Warehouse ("PACE") and Payless Drug Stores ("Payless").

On August 27, 1993, Jerry Phelps ("Phelps"), a Locator representative, contacted Kmart's main office in Troy, Michigan. He was referred to Theresa Valentine ("Valentine"), an attorney in Kmart's Commercial Law section (Item 19, Exhibit 2). Phelps told Valentine that Locator had valuable information and could assist Kmart in securing a large sum of money if Kmart agreed to pay Locator's standard 30 percent finder's fee (Item 19, Exhibit 2, Phelps Affidavit ¶ 5) (*Id.*). Valentine responded that Kmart would not pay a finder's fee at that percentage, but would agree to a finder's fee at a slightly lower rate of 20 percent if Kmart had not already filed a claim form (Item 35, Exhibit A). Phelps agreed, and Valentine revised the assignment to reflect the lower percentage rate.

Valentine then presented the assignment to Anthony Palizzi ("Palizzi"), General Counsel and Vice President of Kmart Corporation, for his signature (Item 24). Palizzi signed the document without reviewing it or inquiring as to what the document pertained to (Item 26). After she retrieved the signed document from Palizzi, Valentine faxed it to George Hoskins, Locator's office manager. That same day, Hoskins signed it and faxed the assignment back to Kmart. Upon receiving the approved assignment, Valentine telephoned Locator and was told that the claim related to the Infant Formula antitrust settlement in the Northern District of Florida.

Immediately thereafter, Valentine called Charlene Haines ("Haines") in the Trade Regulation section of Kmart's legal department. Haines told Valentine that Kmart knew about the Infant Formula settlement and had already prepared, executed, and filed its claim in the matter (Item 24).

Based on her conversation with Haines, Valentine telephoned Locator and "advised [plaintiff] that the assignment was a nullity because Kmart knew all about the case and had prepared, executed and filed its claim without any assistance from Locator" (Item 24, ¶ 17). Valentine sent two letters dated August 30, 1993, and September 9, 1993, which reiterated her assertions that the assignment was void because Kmart filed its claim on August 26, 1993, pursuant to 1–12–99 order without any assistance from Locator (Item 30, Exh. "AH" and "AJ").

In response to Valentine's call and letters, Locator requested the postmarked envelope verifying the date on which the claim was

filed. When Kmart failed to produce the envelope, Locator contacted the class counsel in the Infant Formula litigation. The class counsel in that action forwarded to Locator the postmarked envelope, as well as copies of Kmart's claim and cover letter. Those documents revealed that the Kmart claim was not filed on August 26, 1993, but rather on August 30, 1993.

After months of unsuccessfully trying to persuade Locator to drop its claim, Kmart caused the Infant Formula class counsel to file a motion in the Northern District of Florida requesting an order nullifying all of Locator's assignments. The district court denied the motion on jurisdictional grounds, and ordered that all contested funds be held in escrow until the dispute was resolved. This decision was affirmed on appeal by the Eleventh Circuit Court of Appeals. *In re Infant Formula Antitrust Litigation,* 72 F.3d 842 (11th Cir.1995).

On February 8, 1995, after class counsel announced that Kmart's distributive share was $3,928,049.12, Kmart received $3,482,-744.22. The amount in dispute, $455,304.91, was placed in escrow.

On March 27, 1996, plaintiff filed this action in New York Supreme Court seeking a declaratory judgment enforcing the assignment by Kmart. On April 26, 1996, defendant removed the action to this court under the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 (Item 1). Thereafter, defendant filed its answer, raising nine affirmative defenses, including lack of consideration, breach of contract, lack of conditions precedent, misrepresentation, and equitable estoppel, as well as a counterclaim alleging that plaintiff tortiously and fraudulently interfered with defendant's recovery of all the benefits from the antitrust suit (Item 12). Plaintiff now seeks summary judgment. Defendant opposes and cross-moves for summary judgment, seeking dismissal of plaintiff's complaint and the damages requested in its counterclaim.

### Discussion

### 1. Standard for Summary Judgment

Summary judgment is appropriate where a review of the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the responsibility of identifying for the court the portions of the record which demonstrate the absence of any material facts. *Federal Deposit Insurance Corp. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (citing *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Endico Potatoes, Inc., v. CIT Group Factoring,* 67 F.3d 1063, 1066 (2d Cir.1995)(quoting Fed.R.Civ.P. 56(e)). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Podell v. Citicorp Diners Club Inc.,* 112 F.3d 98, 100 (2d Cir.1997). The litigant opposing summary judgment must therefore bring forward some affirmative indication that his version of relevant events is not "fanciful." *Id.* at 100.

"Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991). When deciding a motion for summary judgment, courts "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *American Casualty Co. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994).

Here, the parties have cross-moved for summary judgment. Thus, this court must determine, by viewing the facts in a light most favorable to each party, (i) whether a factual dispute exists on record, and (ii) whether, based on the substantive law at issue, the disputed facts are material.

### 2. Contract Claim

#### A. Choice of Law

██ "In a diversity case, a district court ordinarily determines the applicable state

law by reference to the choice of law rules of the forum state." *Sheldon v. PHH Corp.,* 135 F.3d 848, 852 (2d Cir.1998). In contract cases, New York applies the rule of "center of gravity" or "grouping of contacts approach." *In re Allstate Ins. Co. and Stolarz,* 81 N.Y.2d 219, 227, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993). "Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the place of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1539 (2d Cir. 1997) (quoting *In re Allstate Ins. Co. and Stolarz,* 81 N.Y.2d 219, 227, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993)). The traditional choice of law factors and the place of contracting and performance are given the heaviest weight in this analysis. *Id.*

■ For example, in *Lazard Freres, supra,* the center of gravity for a contract drafted in New York, negotiated over the phone in New York and Florida, and executed in New York and California, was New York. *Lazard Freres,* 108 F.3d at 1539. Here, the assignment was drafted in New York by Locator (Item 19, Phelps Affidavit ¶ 5; Item 24, ¶ 9). Valentine and Phelps negotiated the final agreement over the telephone in New York and Michigan (Item 19, Phelps Affidavit ¶ 5; Item 24 ¶ ¶ 7–8). Then, Palizzi signed the assignment in Michigan and faxed it back to New York where George Hoskins, Locator's Office Manager, signed it (Item 19, Phelps's Affidavit, ¶ 5, and Item 24 ¶ ¶ 9–12). Traditionally, New York applies the law of where the contract was made, which is defined as the place where the second signing occurred. *Max Factor & Co. v. Janel Sales Corp.,* 298 F.2d 511, 512 (2d Cir.1962) (per curiam).[1] Considering that New York is the center of gravity for this contract, and that its second signing occurred in New York, New York contract law applies.

### B. Breach of Contract Claim

Plaintiff filed this action against Kmart seeking damages for breach of contract.

Plaintiff argues that it is entitled to summary judgment because Kmart has failed to assign plaintiff 20 percent of its Infant Formula settlement proceeds.

■ To state a breach of contract claim, it must first be established that a valid contract exists between the parties. A valid contract exists where there is a manifestation of mutual assent to a bargained for exchange. *Mizuna, Ltd. v. Crossland Federal Savings Bank,* 90 F.3d 650, 658 (2d Cir.1996). "Without agreement, express or implied in fact, there can be no contract. Without a contract there can be no breach of the agreement or a failure to perform the contractual duty with care." *Ez–Tixz, Inc. v. Hit–Tix,* 969 F.Supp. 220, 223 (S.D.N.Y.1997) (quoting *Franklin v. Carpinello Oil Co.,* Inc., 84 A.D.2d 613, 613, 444 N.Y.S.2d 248, 249 (3d Dep't 1981)).

In the instant case, it is uncontested that the assignment was mutually agreed to and validly executed. What is at issue is whether a bargained for exchange or consideration existed between the two parties. Specifically, whether the parties fulfilled their end of the bargain as described in the assignment.

■ "In New York as elsewhere, it is beyond cavil that the failure of a party to perform its obligations under a valid and binding contract constitutes a breach and entitles the other contractually bound party to damages which arose out of the breach." *Ez–Tixz, Inc. v. Hit–Tix,* 969 F.Supp. at 225 (quoting *Custom Imports, Inc. v. Hanmee Trading Co., Inc.,* 596 F.Supp. 1126, 1130 (S.D.N.Y.1984)); *see also, Manufacturers and Traders Trust Co., v. Cottrell,* 71 A.D.2d 538, 543, 422 N.Y.S.2d 990, 993 (1979).

The assignment between Kmart and Locator provides:

In consideration of services rendered, and information provided by Locator of Missing Heirs Inc. (hereinafter referred to as "Locator"), for its specific benefit, by its duly authorized officer does hereby irrevocably authorize the distributing agent to remit directly to Locator twenty percent (20%) of the first $50,000 and fifteen per-

---

1. Although several state courts have questioned the application of the "second signing" rule, no court has gone as far as revoking its authority, and thus it is good law in New York.

cent (15%) of any remaining monies now due to undersigned under this claim form completed and filed by Kmart within five days of execution of this Assignment. If Kmart has already filed a claim form, Locator is owed nothing and this Assignment is null and void.

According to the language of the assignment, if Locator delivered information to Kmart, by which Kmart could recover settlement monies, Kmart was obligated to assign Locator 20 percent of those settlement monies. Locator claims that it provided Kmart with the necessary information to collect the settlement, and Kmart breached the contract when it failed to assign Locator 20 percent of the settlement proceeds.

In response, Kmart contends that the assignment does not constitute a contract because Locator failed to deliver its consideration, namely information by which Kmart could recover settlement monies. Without the delivery of that information there is no consideration to the assignment and thus no contract. To support its contention, Kmart submits evidence that it was already aware of the Infant Formula settlement and was working on the claim form, and therefore Locator did not provide Kmart with the valuable information as it agreed to do in the assignment.

"The issue of consideration, especially in the context of contracts in which the purported consideration is a promise to provide information is deeply embedded in the law of contracts." *Intersource, Inc., v. Kidder Peabody & Co. Inc.,* 1992 WL 369918 (S.D.N.Y. 1992). *Intersource* involved two parties who entered into a contract whereby the plaintiff agreed to provide information regarding an unclaimed state tax refund to the defendant in exchange for a commission of 40 percent of the recovered funds. After plaintiff divulged the details of the tax refund, defendant realized that it was already aware of the refund and had been in negotiations with the State long before it ever communicated with plaintiff. As such, defendant refused to pay plaintiff the 40 percent commission, arguing that the contract was void for lack of consideration. The Southern District of New York agreed, holding that a defense of a lack of

consideration exists where a company was independently aware of information regarding an unsettled claim prior to entering a contract with the information provider. *Id.*

New York State Courts have delivered similar rulings in cases where information is offered as consideration. For example, in *Singer v. Karron,* 162 Misc. 809, 294 N.Y.S. 566 (N.Y.Mun.Ct.1937), plaintiff contracted with defendant to provide information whereby the defendant could recover certain money in exchange for a 50 percent finder's fee. After the contract was executed, plaintiff informed defendant that the money to be recovered was interest earned on a bank account already owned by defendant. *Singer,* 162 Misc. at 810–11, 294 N.Y.S. at 568. Defendant refused to compensate plaintiff because he claimed that he was already aware of the existence of the bank account.

The court held in favor of the defendant finding that "[i]t is well settled that information may be a valid consideration for a promise to pay for it, and may be the subject of bargain and sale, or of contract .... However, to constitute a valid consideration, the information must be new or novel and valuable, or thought to be so." *Singer,* 162 Misc. at 811, 294 N.Y.S. at 569 (citations omitted).

In *Soule v. Bon Ami Co.,* 201 A.D. 794, 195 N.Y.S. 574, 576 (2d Dep't 1922), plaintiff made an express contract to disclose a way to increase defendant's profits. After plaintiff's disclosure revealed that the plan simply involved raising prices, defendant refused to pay, and plaintiff sued. The Appellate Division denied plaintiff any recovery, finding that the bargain lacked consideration because the idea was not novel. *Soule,* 201 A.D. at 796, 195 N.Y.S. at 576. Courts have reiterated this principle in more recent decisions. *See e.g., Murray v. National Broadcasting Co., Inc.,* 844 F.2d 988 (2d Cir.1988) (no enforceable contract right existed where alleged contract right involved using an idea that lacked novelty), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988); *Apfel v. Prudential–Bache,* 81 N.Y.2d 470, 478, 600 N.Y.S.2d 433, 436, 616 N.E.2d 1095 (information in pre-disclosure agreement can only be consideration where the information is new to the buyer). Accordingly, the issue

in this case is not, as Locator asserts, whether Kmart had filed the claim prior to August 27, 1993, but rather whether Kmart had knowledge of the Infant Formula case prior to Phelps contacting Valentine.

On July, 7, 1992, the legal notice published in the Wall Street Journal regarding the Infant Formula case was forwarded to Charlene Haines, an attorney in the Trade Regulation section of defendant's legal department (Item 29, ¶ 14). The Trade Regulation section is responsible for tracking antitrust cases and preparing claims for those cases in which Kmart may have an interest (Item 26). Shortly after reading the article, Haines directed one of Kmart's paralegals, Cheryl Peters, and her supervisor, Susan Senapole, to write class counsel in the suit and inquire about Kmart's interest as well as the interests of Kmart's subsidiaries, PACE and Payless (Item 29 ¶ 16).

Throughout the fall of 1992 and spring of 1993, Peters and Senapole were in frequent contact with class counsel in anticipation of the claim forms (Items 27, 28). On July 1, 1993, Kmart received its approved claim form from the Northern District of Florida. Haines and Peters both recalled in their affidavits that the form clearly indicated that all claims needed to be filed by August 31, 1993 (Items 28–29). After receiving the form, Haines instructed Peters to begin working on the claim. Specifically, Haines asked Peters and Senapole to contact Kmart's subsidiaries to inquire whether Kmart would be filing a claim form on their behalf (Item 30, Exh. K). Payless opted to file its own claim, while PACE decided to have Kmart file its claim (Item 30, Exh. O).

Haines also asked Senapole to contact Mathew Unger, a senior accountant at Hoffler & Company, the accounting firm handling the Infant Formula settlement (Item 30, Exh. X). According to Unger's affidavit, Senapole telephoned him on three occasions in early August inquiring as to whether all of Kmart's locations would be encompassed in the purchase information provided in response to Kmart's pre-approved claim form. *Id.*

On August 25, 1993, Kmart filed PACE's claim form (Item 30, Exh. AE). After the PACE claim was filed, Haines, Peters, and Senapole turned their attention to Kmart's claim form. Kmart argues that its claim was completed after PACE's claim because the Trade Regulation section wanted to include additional information to ensure that the large number of infant formula purchases by different Kmart entities were credited to Kmart's "global" account (Item 30, Exh. AD). The Kmart claim, with this additional information, was prepared on August 26, 1993, pursuant to 1–12–99 order and was delivered the mailroom on August 27, 1993. Haines, Peters, and Senapole assumed the claim was sent out on August 27, 1993, but in fact, the claim was not mailed until August 30, 1993 (Item 30, AE–2).

It is apparent from the affidavits of Kmart's employees and from the correspondences with class counsel and Matthew Unger that Kmart had knowledge of the Infant Formula claim prior to its contact with Locator. As such, the information that Locator divulged to Valentine on the afternoon of August 27, 1993, was not new and, in fact, bore no value to Kmart. Although the assignment did contain language binding Kmart to pay the finder's fee if it had not already filed a claim, the finder's fee was in return for valuable information.

Since the information Locator provided was not new and played no part in Kmart's procurement of the settlement proceeds, Locator's information cannot serve as consideration for the contract. Accordingly, the assignment is void for lack of consideration.

### 3. Defendant's Request for Damages and Attorney's Fees

Defendant counterclaims for compensatory damages representing the amount of interest defendant would have earned on its share of the Infant Formula settlement, which has been in escrow pursuant to the Eleventh Circuit's decision in *In re Infant Formula Antitrust Litigation,* 72 F.3d 842 (11th Cir.1995). Defendant also requests punitive damages, attorney's fees, and court costs. However, the defendant has failed to support its claims with legal authority or explain why such relief should be given. The court finds that these damages are not justi-

fied. As such, defendant's counterclaim is dismissed, and its request for damages, attorney's fees, and court costs is denied.

### Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted. The complaint is dismissed, and judgment shall enter for the defendant.

So ordered.